462 So.2d 710 (1985)
Robert C. GILLIARD, Jr.
v.
STATE of Mississippi.
No. 55566.
Supreme Court of Mississippi.
January 9, 1985.
Rehearing Denied February 13, 1985.
*712 Lionel R. Barrett, Jr., Nashville, Tenn., for appellant.
Edwin Lloyd Pittman, Atty. Gen. by William S. Boyd, III and Charles W. Maris, Jr., Sp. Asst. Attys. Gen., Jackson, for appellee.
En Banc.

ON APPLICATION FOR WRIT OF ERROR CORAM NOBIS
ROY NOBLE LEE, Presiding Justice, for the Court:
This Court affirmed the capital murder death sentence of Robert C. Gilliard, Jr. on February 16, 1983. Gilliard v. State, 428 So.2d 576 (Miss. 1983). The United States Supreme Court denied petition for writ of certiorari to the Supreme Court of Mississippi on October 3, 1983. Application for leave to file petition for writ of error coram nobis was filed in this Court November 7, 1983, setting out twenty-nine (29) grounds for relief. We granted the application on two questions and remanded the cause to the Circuit Court of Jones County, Mississippi, for that purpose, 446 So.2d 590. The questions follow:
(1) Petitioner should be granted a new trial in view of the unconstitutional aspects of his plea of guilty.
(2) Petitioner was denied the effective assistance of counsel at his guilt and sentencing trials in violation of the Sixth, Eighth and Fourteenth Amendments.
The Circuit Court of Jones County conducted an evidentiary hearing on the two questions and resolved them against the petitioner, viz, that the petitioner's guilty plea was free and voluntary and the guilty plea and proceedings in connection therewith were not violative of petitioner's constitutional rights, and that petitioner was not denied the effective assistance of counsel at his guilt and sentencing trials in violation of the Sixth, Eighth and Fourteenth Amendments. The petitioner has appealed to this Court from the decision of the Jones County Circuit Court on those questions.

I.
Did the lower court err in concluding that the guilty plea, and the proceedings surrounding such plea, were constitutionally sufficient?
In order to meet constitutional standards, a guilty plea must be freely and voluntarily entered. It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it involves him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty. Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).
The petitioner expressed his desire to enter a plea of guilty to capital murder at the guilt phase of his trial. Before determining whether the guilty plea should be accepted, the trial judge conducted a lengthy interrogation of the petitioner for the purpose of ascertaining whether or not petitioner fully understood the charge against him, the critical elements of the charge, the possible adverse effects of a guilty plea and that, if the guilty plea were accepted by the court, a jury would then be impaneled and the jury could fix his punishment at death. The interrogation and answers of the petitioner consumed eight (8) pages in the trial record. The expressions and answers of the petitioner appear from the record to be clear, lucid, and knowledgeable. At one point in the interrogation, petitioner stated that he did not wilfully kill Grady Chance. That part of the interrogation is set forth:
Q. Do you realize that when you plead guilty to this charge now before you, that you are saying to this Court that you did on or about the 27th day of August, 1981 here in the Second Judicial District of Jones County, Mississippi, that you did unlawfully, wilfully and feloniously, with malice aforethought, kill and murder one Grady Chance, a human being while you were engaged in the *713 commission of the crime of robbery upon him in violation of Section 97-3-19(2)(e) of the Mississippi Code of 1972, as amended?
Do you realize that's what you are telling the Court?
A. Yes, sir.
Q. Before the Court will accept your plea of guilty the Court must be absolutely satisfied that you understand what you are pleading guilty to.
I have read what the indictment charges you with, and you said that you understood that, but I want to fully understand that you understand each part of it.
You will be telling this Court that this crime occurred on the 27th day of August, 1981; is that what you are telling the Court?
A. Yes, sir.
Q. Are you telling the Court that this happened there in the Second District of Jones County, Mississippi?
A. Yes, sir.
Q. You are telling the Court that you unlawfully killed Grady Chance?
A. Yes, sir.
Q. You are telling the Court that you willfully killed Grady Chance?
A. No, sir.
Q. You are not telling us that you did willfully do it?
* * * (Conference between Defendant and Public Defender)
A. Oh, yes, sir.
Q. You are telling the Court that you feloniously killed him, with malice aforethought?
A. Yes, sir.
Q. You are also telling the Court that this was done  that this killing occurred while you were engaged in the commission of the crime of robbery?
A. Yes, sir.
Q. Is that what you are telling the Court?
A. Yes, sir.
Q. The purpose of this hearing, as I have stated to you, is to see if you enter your plea freely, voluntarily and intelligently, and I have already explained to you what a jury could do even though you pleaded guilty, and you said you understood that, and is that correct?
A. Yes, sir.
Q. Has anyone offered you anything to get you to plead guilty?
A. No, sir.
The petitioner was called by his own counsel and he was the only witness who testified at the coram nobis hearing. The State offered no witnesses. Petitioner stated that he repeatedly told his attorney the gun went off accidentally, but that his attorney advised him to plead guilty anyway. His position on this question is that he entered the plea of guilty because his attorney told him to do so.
The coram nobis record reflects that petitioner and his attorney discussed the guilty plea at length and on more than one occasion before it was entered; he and his attorney met with petitioner's three sisters and discussed the guilty plea and trial strategy with them; two of the sisters were in favor of pleading guilty, while one of them opposed it. Apparently the petitioner and his attorney discussed the overwhelming evidence against petitioner, viz, testimony of an accomplice, an eyewitness (Mrs. Grady Chance), and petitioner's own confession. Also, it appears that the strategy was for petitioner to be frank with the jury, and hope to arouse their sympathy. Further, there was considered the possibility of excluding certain evidence.
We are of the opinion that the petitioner had full knowledge of the charge against him, the elements of that charge, and the consequences which might result from entering a plea of guilty, and we are of the opinion that the finding of the lower court that the plea of guilty was free and voluntary and was not constitutionally infirm does not constitute error.

II.
Did the lower court err in deciding that the petitioner received effective assistance *714 of counsel in view of Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)?
Strickland, decided May 14, 1984, is the most recent case of the United States Supreme Court addressing the question of ineffective assistance of counsel. That Court, speaking through Justice O'Connor, set forth the following important principles dealing with this troublesome question:
(1) There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.
(2) The two-prong test to determine whether or not defense counsel was constitutionally ineffective is
(a) The petitioner must show that counsel's conduct was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment, and
(b) If the petitioner can show that his counsel was ineffective, then he must show that he was prejudiced by counsel's mistakes.
Strickland states the standard: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ___ U.S. at ___, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Applying the standard set forth in Strickland to the effectiveness of petitioner's counsel, we now consider the nine (9) alleged errors in the original trial, which petitioner claims rendered his trial counsel ineffective in violation of his Sixth Amendment right.
(1) The trial counsel improperly assisted the petitioner to have a preliminary hearing granted in this case.
The petitioner has put on no proof that the failure to have a preliminary hearing was not a strategic move. Also, he has shown no prejudice from the failure to have a preliminary hearing. Further, petitioner has failed to show any advantage or benefit he could have gained from having a preliminary hearing, therefore, we are of the opinion that petitioner has not met the Strickland test.
(2) Petitioner's counsel did not comply with the Mississippi statute concerning the raising of the question of change of venue.
At the trial, petitioner's counsel made a motion for change of venue, but the motion did not follow the statute and counsel did not pursue the change of venue. Again, petitioner has not shown prejudice and there is no indication that a change of venue would have effected a different result in the trial.
(3) The trial counsel failed to request individual sequestered voir dire during the selection of the jury for the sentence trial.
This Court has approved questioning the jury as a panel provided the defense is given adequate opportunity to question individual jurors. Peters v. State, 314 So.2d 724 (Miss. 1975). Petitioner did not show, or attempt to show, anything different he could have learned through individual voir dire that would have resulted in a different jury panel in the trial of the case. No case has been cited holding the denial of individual voir dire to be error. Prejudice was not shown on the coram nobis hearing in the lower court.
(4) The trial counsel failed to provide effective assistance of counsel by failing to introduce proof that the State systematically excluded blacks not only from this trial, but from other trials.
Petitioner complains that his trial counsel failed to introduce proof to show the systematic exclusion of black jurors. However, on the coram nobis hearing, petitioner did not make any attempt to show a systematic exclusion of black jurors and he has not indicated any such exclusion. Neither has he introduced any testimony or evidence that there was a probability of systematic exclusion of such jurors. The *715 claim or allegation of systematic exclusion stands alone and is not sufficient to meet the test. Booker v. State, 449 So.2d 209 (Miss. 1984).
(5) The defense counsel permitted the petitioner to plead guilty to deliberate, intentional murder when, prior to the plea of guilty, there had been elicited from his client a statement that contradicted the plea.
(6) The defense counsel should not have allowed his client to enter a plea of guilty to the first count of the indictment of capital murder in view of the recent decision of Enmund v. Florida.
We have held, supra, that the guilty plea entered by petitioner was free and voluntary. Petitioner now contends that, since he admitted he wilfully killed Mr. Chance, petitioner's credibility was destroyed when he testified in the sentencing trial that the gun was accidentally discharged. The plea of guilty and the conduct of the sentencing trial appear to be strategic decisions on the part of petitioner and his trial counsel. On the coram nobis hearing, the trial judge found that the cross-examination on this point was not as harmful as the petitioner giving different accounts of his part in the crime.
Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), held that the death penalty cannot be imposed on a defendant who aided and abetted a felony in which a murder was committed, but did not himself kill, attempt to kill, intend to kill, or contemplate that life would be taken. In the present case, petitioner voluntarily armed himself and was the trigger man in the crime. We are of the opinion that Enmund does not afford petitioner any relief.
(7) The defense counsel provided ineffective assistance of counsel by allowing the District Attorney to point out that a sentenced life inmate could be eligible for parole in ten years.
Petitioner contends that remarks in his attorney's closing argument at trial invited highly prejudicial remarks from the district attorney; that this Court so held in the opinion affirming his death penalty; and that his trial counsel was ineffective because of those remarks. Remarks of petitioner's counsel and the district attorney at trial follow:
BY MR. PARRISH:
I would like to mention one other thing to you at this point. Approximately two weeks prior to this he was convicted of another armed robbery here in town, and he plead guilty to that too, and he received a sentence of thirty years, and if you see fit to give him life, he will be serving thirty years, plus life.
* * * * * *
He doesn't need to be out, and the only thing that I can say is that Robert Gilliard ought to be in the state penitentiary. He is already going there for thirty years, and what you are to decide is whether or not he is going to get those thirty years, plus life, or, if at sometime before those thirty years, he is going to be executed.
* * * * * *
I don't believe he will ever be a danger to anyone again. I don't mean he wouldn't be a danger if we let him walk out on the street because he would probably start drinking again and fall in with other people like Warren Seals, but that's not where he is going, if you come back into the courtroom and inflict a sentence of life imprisonment. We can remove him from society without inflicting the death penalty in this case.
I am glad to know that in addition to a life sentence that he will have thirty years too, because he won't be around, and the only question is whether or not he ought to suffer death.
BY MR. SMITH (District Attorney):
Speaking of how long things go  about the penitentiary. I think  don't believe for a second that Mr. Parrish is telling you that, "well, he will get life," and then I guess he is wanting you to believe that after he dies they are going to keep him up there thirty more years. *716 It doesn't work like that about how long you are at the penitentiary, and he knows as well as I do, life is ten years and you are eligible then for parole.
Appellant objected to the argument of the district attorney as being improper and prejudicial. The lower court overruled the objection "in view of the argument made by the defense counsel."
428 So.2d at 583-84.
Petitioner states in his brief that the language of the Mississippi Supreme Court, in holding that the district attorney's answer did not constitute reversible error, was a prima facie showing of ineffective counsel. However, those remarks are taken in isolation. The full comment of the Court appears in 428 So.2d at 584:
The statement by the district attorney constituted error. Prosecuting attorneys often become overzealous in arguing capital cases, particularly when attorneys for the defendant attempt to overemphasize and exaggerate the real meaning of a life sentence in the penitentiary. Prosecuting attorneys should refrain from making prejudicial or erroneous remarks, even in response to argument of defense counsel. In the present case, the remarks of the appellant's attorney clearly and obviously were made for the purpose of leading the jury to think that, because of a thirty-year armed robbery sentence and with a life sentence in the present case, the appellant would spend the remainder of his life in the state penitentiary. Without question, those remarks amounted to provocation and caused the district attorney to respond as he did. Therefore, under the decisions of this Court, the error does not require reversal.
428 So.2d at 584.
Petitioner's attorney at trial argued that, if he was sent to the penitentiary for life, he would not be a threat to society; that the jury should spare his life, because in prison he would no longer be such a threat to society; and that petitioner was basically a good person who fell in with a bad crowd.
Applying the two-prong test and standards of Strickland, the strategy argument of petitioner's counsel does not render him ineffective counsel.
(8) The petitioner was denied effective assistance as no competent counsel would fail to take advantage of the right to make an opening statement in a death penalty case.
The decision whether to make an opening statement was a strategic one. The district attorney did not make an opening statement, and it is probable that both parties agreed not to make them. Petitioner's attorney may have felt that he had nothing to gain by making a statement. At any rate, we are of the opinion that no prejudice resulted from a failure to do so.
(9) The fact that the inducement or deal made by the co-defendant was not instructed on by the court was directly the responsibility of ineffective assistance of counsel on behalf of the defense counsel.
An accomplice, who testified for the State, claimed that the State had not promised him he would not be indicted for capital murder, if he testified. However, such promise had been made. Petitioner's trial counsel requested the trial judge to inform the jury about the bargain, but this request was refused as a comment on the evidence. No further request was made, even though the trial judge indicated he would consider a different instruction. Petitioner's trial counsel stated at the trial that he intended to do more research before requesting an instruction on this issue. It, therefore, seems that the decision not to request an instruction was not strategic, but probably inadvertent. However, in his closing argument, the district attorney told the jury that he had made a deal with the witness.
In Strickland, the United States Supreme Court said:
In particular, the minor differences in the lower court's precise formulations of the performance standard are insignificant; the different formulations are *717 mere variations of the over-arching reasonable standard. With regard to the prejudice inquiry, only the strict outcome determinative test, among the standards articulated in the lower courts, impose a heavier burden on defendants than the test laid down today. The difference, however, should alter the merit of an ineffectiveness claim only in the rarest of cases.
___ U.S. at ___, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.
Applying the Strickland test, we are of the opinion that Point # 9 does not render petitioner's trial counsel ineffective.
After carefully considering the trial record, the coram nobis hearing, the trial judge's findings on the coram nobis hearing, and the briefs of the parties, we are of the opinion that the guilty plea of petitioner was free and voluntary and that under Strickland v. Washington, supra, the nine lapses argued by petitioner's counsel, taken individually and in combination, did not amount to ineffective assistance of counsel. Therefore, the judgment of the lower court on those matters remanded to it for evidentiary hearing from this Court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
HAWKINS, J., dissents.
HAWKINS, Justice, dissenting:
I respectfully dissent.
Gilliard complains of a number of deficiencies in his representation by counsel, and many of them certainly raise eyebrows.[1] Any resultant prejudice therefrom, however, can only be conjectural.
Under the guidelines of Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); and Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), one contended dereliction, in my view, was clearly prejudicial.
Unquestionably, while Gilliard was engaged in the commission of a robbery, he shot and killed Mr. Grady Chance, for which he was guilty of capital murder under Miss. Code Ann. § 97-3-19(2)(e). Under this subsection it is not necessary that the killing be intentional in order to constitute the crime of capital murder.
Gilliard has never denied this, and knowingly pleaded guilty to it.
The only defense he had, which was in mitigation, was his contention he accidentally shot Mr. Chance in the chest when the shotgun with which he was armed fell from his shoulder and the butt end struck a store counter and discharged. (Original opinion 428 So.2d 576, p. 578)
That was his only defense on the facts in the circuit court of the Second Judicial District of Jones County and before this Court on his appeal.
The public defender emasculated that one mitigating circumstance, which might have caused the sentencing jury to spare his life.
The majority sets forth at length the questioning of Gilliard by the circuit judge prior to his guilty plea. I re-quote a portion:
Q. You are telling the Court that you unlawfully killed Grady Chance?
A. Yes, sir.
Q. You are telling the Court that you willfully killed Grady Chance?
A. No, sir.
Q. You are not telling us that you did willfully do it?
(Conference between Defendant and Public Defender)
A. Oh, yes, sir.
Q. You are telling the Court that you feloniously killed him, with malice aforethought?
A. Yes, sir.

*718 Q. You are also telling the Court that this was done  that this killing occurred while you were engaged in the commission of the crime of robbery?
A. Yes, sir.
Three things are apparent from this questioning: First, Gilliard told the Court he did not willfully kill Mr. Chance. Next, there was a conference between Gilliard and his public defender. Third, the trial judge did not repeat his initial inquiry to Gilliard as to whether he had "willfully killed" Mr. Chance, but rather asked him if he "feloniously killed him, with malice aforethought."
Later, at the sentencing phase of the trial, Gilliard on direct examination testified the shooting of Mr. Chance was accidental, whereupon the prosecuting attorney on cross-examination thoroughly discredited this claim by the fact he had just freely and voluntarily pleaded guilty to intentionally and deliberately killing Mr. Chance. The prosecuting attorney made mincemeat of the one contention which stood a chance of saving his life.
To me, Gilliard was prejudicially denied effective assistance of counsel for the following reasons:
1. It was not necessary to constitute the crime of capital murder that he willfully killed Mr. Chance.[2]
2. Gilliard denied intentionally killing Mr. Chance, and his own attorney advised him to state otherwise. Advice of counsel can be the only reason he would have made such a concession in his guilty plea, because his entire defense throughout was that the shooting was accidental.
3. No attorney could be unaware of the fact that in thus advising him, he was not only adding an additional reason to inflict the death penalty, but was depriving him of probably the best, if not the only, chance he had for the sentencing jury to spare his life. Such an admission at this hearing on his plea of guilty destroyed the credibility of his testimony during sentencing. His lawyer had the responsibility to fully and thoroughly inform him of the consequences of this glaring inconsistency.
I would sustain the petition and grant Gilliard a trial.
The prosecution and defense of capital murder cases, while always serious, used to be relatively simple for judges and attorneys. The U.S. Supreme Court has changed all this. That Court has rendered a number of landmark decisions of such subtlety and complexity they tax the minds of the best of legal scholars to comprehend, and even that Court's own members have sharp disagreement as to their meaning. I endeavored to make this point in a review of U.S. Supreme Court decision in Hill v. State, 432 So.2d 427, pp. 452-462 (Miss. 1983).
In interpreting U.S. Supreme Court decisions, our U.S. Court of Appeals in lengthy, complex opinions has super-imposed additional difficult requirements for all death penalty cases, which bind this Court as well.
Our Legislature, following the Federal Courts' requirements, has enacted detailed death penalty statutes, constantly being revised.
The trial of capital murder cases is now a specialized, difficult field of criminal law.
It is, therefore, foolhardy for any circuit judge or attorney to participate in a capital murder case without protracted study and preparation. Even the most skilled trial *719 attorney needs special, lengthy preparation before undertaking one of these cases.
I make these observations to stress the importance of circuit judges, prosecuting attorneys and defense attorneys familiarizing themselves with this turbulent specialized area of criminal law before participation in such a case.
If the circuit judge assures himself that the attorney he is appointing in a capital murder case will be familiar with the law on this subject, he will not only insure a better and fairer trial. He will also markedly lessen the chance for reversals and avoidable heart-rending delay in the judicial process. Any other course is penny wise and pound foolish.
NOTES
[1] Failure of counsel to properly request a change of venue, failure to request individual sequestered voir dire, failure to object to closing argument, failure to make opening statement in argument.
[2] The indictment charged Gilliard and Edwin T. Darby with murder under Miss. Code Ann. § 97-3-19(2)(e). As above noted, under this subsection, a killing perpetrated while in commission of a robbery is capital murder even though not intentional. Thus, on advice of counsel, Gilliard admitted a fact unnecessary to a plea of guilty to capital murder under this subsection.

While this admission was unnecessary to constitute a valid plea of guilty, it wreaked havoc with the one reason Gilliard had to give the jury under the facts to spare his life.