# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 07-KA-59203-SCT

*JAMES ALBERT KING, HATTIE RAY KING AND JOHNNY WAYNE KING*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/87 |
| TRIAL JUDGE: | HON. GEORGE CARLSON |
| COURT FROM WHICH APPEALED: | TALLACHATACHIE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | PRO SE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | APPLICATION DENIED - 8/15/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. James Albert King (James) and Johnny Wayne King (Johnny) were indicted in the Circuit Court of Tallachatchie County. James was convicted of conspiracy, obstruction of justice, and bribery. Johnny was convicted of conspiracy and bribery. On appeal, this Court, in ***King v. State***, 580 So. 2d 1182 (Miss. 1991), affirmed those convictions. They now apply to this Court, pursuant to the provisions of Miss. Code Ann. § 99-39-1 to -29 (1992 and supp. 1995), as amended, for permission to pursue post-conviction relief in the trial court. They claim ineffective assistance of trial and appellate counsel, violation of Miss. Code Ann. § 47-3-1 (1972), weight and sufficiency of the evidence and misstatements of the facts in the reported opinion of this Court. This Court finds that the only issue which warrants discussion is whether the Kings are entitled to a hearing for the limited purpose of determining whether certain witnesses should have been allowed to testify at trial. A thorough review of this issue reveals no merit. All other issues raised by the Kings are also clearly without merit. This Court must deny the requested relief.

## FACTS

¶2. Johnny Wayne King was indicted for the sale of a controlled substance by the Grand Jury of Tallahatchie County. At trial, after the jury was impanelled, Johnny and his father, James Albert King, decided to "fix" this case by contacting several of the jurors. The contacted jurors reported the contact by the Kings to the trial court, Hon. George Carlson. Judge Carlson declared a mistrial, and ordered a complete investigation and search warrant of the Kings concerning the juror contact.

¶3. After the investigation was completed, the Kings were indicted for conspiracy, obstruction of justice and bribery. The Kings, in a pretrial motion, asked Judge Carlson to recuse himself, but he refused. The jury returned verdicts of guilty on all but one of the charges. James Albert King, convicted of conspiracy, obstruction of justice, and bribery, was sentenced as an habitual offender to fourteen years in prison and fined $6,500.00. Johnny Wayne King, convicted of conspiracy and bribery, was sentenced as an habitual offender to ten years in prison and fined $6,500.00.

## DISCUSSION OF LAW

¶4. The Kings claim that their attorneys advised them that it would be better to have witnesses other than themselves testify since evidence of their prior convictions would be admissible. No witnesses were in fact called. The Kings, citing as authority *Culberson v. State*, 412 So. 2d 1184 (Miss. 1982), claim that had they known that their attorneys were going to rest their case and not call any witnesses, they would have testified in their own defense.

¶5. The Kings now claim that their distinguished trial counselors, James D. Franks, James W. Burgoon, Jr. and J.P. Coleman were ineffective because they should have allowed certain witnesses to testify who in fact did not testify.

¶6. The defendants rely solely upon *Culberson v. State*, 412 So. 2d 1184 (Miss. 1982), wherein this Court granted a petition for writ of error coram nobis and remanded the case because the defendant claimed that he had been denied the right to testify. In *Culberson*, the single issue was "whether the denial stems from the refusal of the court to let a defendant testify . . . or whether the denial stems from the failure of the accused's counsel to permit him to testify." *Id.* at 1186.

¶7. Defendants seem to claim they have uttered magical words entitling them to a hearing on this issue. The defendants have not uttered any magical words. *Culberson* addresses solely the denial to a defendant of the right to testify, thus, it is not nearly so broad and sweeping as claimed by the Kings.

¶8. A close examination of this record reflects that the trial court repeatedly emphasized during three full pages of the transcript the defendant's right to testify. Judge Carlson stated:

> And, at the proper time, each one of you will have to make a decision as to whether or not you wish to exercise your Constitutional Right to come forward and be sworn in and to take the Witness Stand and give sworn testimony in your defense. . .and I want it clear for the benefit of the three of you that you have this right to either testify or not testify so that we can clear up any question that might crop up on down the road regarding whether or not you understood that you had that right to testify . . . I am sure you'll talk to your lawyers about that, but *the final decision obviously will have to be yours*. . . Now, if you should decide not to testify, again, *that will be a free decision that you will be able to make*. And, I will take it, if you

should decide not to testify, any of you, that is a free and voluntary decision that you will be making since I'm explaining to you *you have that right to testify or not to testify.* Do any of you have any questions at all about that?

*No response.*

In other words, ia (sic) any of you should --not testify, then, I don't want you on down the road to say, *"Well, I wanted to testify, but my lawyer kept me off the Stand, or a relative of mine kept me off the Stand. I'm explaining to you now you have that right and if you feel like that right's being violated, then, you just let me know before it comes time for you to testify, and I'll certainly make sure that you have that opportunity if that's the decision you make. I don't want any problems to arise as far as somebody trying to keep you off the Witness Stand against your will. Any questions at all about what I've said so far?*

(James Albert King) *No, sir.*

(Johnny Wayne King) *No, sir.*

I take it then *there is a clear understanding now.* You understand everything I've said?

(James Albert King) *Yes, sir. I appreciate it, Your Honor.*

(emphasis added).

¶9. As noted, the record belies the Kings' contention. The excellent affirmative showing within the record, made at the instance of the trial judge absolutely "slam dunks" any legitimate claim by the Kings that they did not know of their constitutional right to testify. This is nothing more than a thinly disguised back door approach by the Kings to "end run" a well documented record by claiming that had they known that the three witnesses they had present were not going to testify, they themselves would have elected to testify. Given the knowledge that Judge Carlson had clearly and repeatedly conveyed to the Kings, when their counsel rested without putting on any witnesses, the Kings could and should have objected, if in fact their counsel was indeed guilty of such egregious conduct. There are several methods which could have been utilized by the Kings in accomplishing this feat, all out of the hearing of the jury. During the trial, by side bar conference, the Kings could have asked to approach the bench and directly conveyed their complaints to the trial judge. They could have asked to go to chambers to discuss this sensitive subject matter. When both sides commenced going over jury instructions, this was the ideal time to tell the trial court that they had been misled by counsel and they wanted to offer other witnesses, or alternatively, testify themselves. And yet, the Kings remained silent, letting this perfect opportunity to expose their counsel's supposed egregious ineffective assistance go by without a word. At that time the mistake, if indeed it was a mistake, was surely correctable by the trial court. All the Kings had to do was tell the trial court of their dilemma. As Judge Carlson so apply noted, "*You just let me know . . . if you feel like that right's being violated . . . I'll certainly make sure that you have that opportunity.*" (emphasis added). Given the lengthy extent of the trial court's comments on this subject matter, it is absurd to now believe the Kings have met their *Strickland* requirements on the face of their documentation. An evidentiary hearing is not required in such cases. This Court, in *Harris v. State*, 578 So. 2d 617, 620 (Miss. 1991), stated:

In order for a contested fact to require an evidentiary hearing it must be material. Moreover, *where an affidavit is belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary, to the extent that the court can conclude that the affidavit is a sham, no hearing is required.* (emphasis added).

The Kings' claims are totally contradicted by the record on its face and as such renders their current documentation a "sham." In **Smith v. State**, 636 So. 2d 1220, 1224 (Miss. 1994), this Court stated:

In contrast, Smith's current contentions and credibility are certainly suspect. When we compare his previous sworn testimony during his guilty plea with his current affidavit, the latter is practically rendered a "sham," thus allowing the summary dismissal of the petition to stand. *See* **Harris v. State**, 578 So. 2d 617, 620 (Miss. 1991). At one time or the other Smith has obviously committed perjury, which may warrant appropriate actions by a grand jury. *See* **Sanders v. State**, 440 So. 2d 278, 289 (Miss. 1983) (Roy Noble Lee, J., specially concurring).

¶10. We must also take note of the emphasis which trial judges may place upon a defendant's prior representations under oath during guilty pleas. This Court, in **Mowdy v. State**, 638 So. 2d 738, 743 (Miss. 1994), stated:

There should be a strong presumption of validity of anyone's statement under oath. However, we are now faced with one statement or the other not being the truth . . . . "Where the petitioner's version is belied by previous sworn testimony, for example, as to render his affidavit a sham we will allow summary judgment to stand." If ever there was a sham, it is clearly within these allegations through which Mowdy and Scrivner attempt to get this Court to order an evidentiary hearing to set aside validly imposed sentences based upon what they both now claim were involuntary pleas.

*Mowdy*, 638 So. 2d at 743 (citations omitted).

¶11. Judge Carlson's detailed communications to the Kings on this subject, prior to testimony commencing, and the Kings' responses in return, totally belie their current claims now before this Court, and as such, render their affidavits and other documentation a sham. We decline to order an evidentiary hearing to set aside validly imposed sentences based upon these claims.

¶12. This Court must agree with the State. This is nothing more than an attempt by the Kings to have the Court second-guess trial strategy decisions by competent counsel, made with the Kings apparent approval when viewing this record as a whole. Decisions regarding which witnesses to call are peculiarly within the gambit of trial strategy. **Alexander v. State**, 503 So. 2d 235, 240 (Miss. 1987); **Buckelew v. United States**, 575 F. 2d 515, 521 (5th Cir. 1978).

¶13. The Kings have not even come close to meeting the two-prong test announced in **Strickland v. Washington**, 466 U.S. 668 (1984), and adopted by this Court in **Gilliard v. State**, 462 So. 2d 710, 714 (Miss. 1985). Defendants have wholly failed to demonstrate that their attorney's conduct was so deficient as to compromise their Sixth Amendment right to counsel and that they were prejudiced by counsel's performance. *Id.* More importantly, **Strickland** also mandates that:

[t]he defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland*, 466 U.S. at 694. The Kings' habitual offender status certainly highlights their "unlikely status as candidates for the witness stand," and gives added credibility to counsel's strategy. We do not undertake this opportunity to second guess obvious trial strategy, nor is this Court inclined to extend the Court's holding in *Culberson*. Nor are we enlightened by the affidavits of the three supposed ready, willing and able other witnesses. We hold that there is no showing under the second prong of *Strickland* that their distinguished counsel's decision not to call witnesses constitutes deficient performance or that prejudice resulted from that trial strategy decision. There is no merit to this issue. This Court, therefore, denies the application for leave to file a motion to vacate the King's convictions.

**¶14. APPLICATION FOR LEAVE TO FILE MOTION TO VACATE CONVICTIONS AND SENTENCES IN LOWER COURT DENIED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN AND ROBERTS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J. MILLS, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶15. Although I agree with the majority that most of the issues raised by the Kings are without merit, an evidentiary hearing should have been granted for the limited purpose of determining whether certain witnesses should have been allowed to testify at trial. Accordingly, I dissent.

¶16. The Kings claim that their attorneys advised them that it would be better to have witnesses other than themselves testify since evidence of their prior convictions would be admissible. None of the attorneys, however, called the witnesses who were present at trial and ready to testify on behalf of the defendants. In support of their allegations, the Kings have provided their affidavits along with those of Hattie Ray King, Johnny Wayne's mother and James Albert's wife, and Ricky Grantham.

¶17. Applicants state that had they known that their attorneys were going to rest and not call any witnesses, they would have testified in their own defense. In *Culberson v. State*, 412 So. 2d 1184 (Miss. 1982), where this Court granted a petition for writ of error coram nobis and remanded the cause to the lower court for an evidentiary hearing, we stated:

Section 26 gives an accused the right to testify in his own behalf. The denial of the right of an

accused to testify is a violation of his constitutional right regardless of whether the denial stems from the refusal of the court to let a defendant testify . . . or whether the denial stems from the failure of the accused's counsel to permit him to testify.

*Culberson*, 412 So. 2d at 1186.

¶18. The Kings were advised by the circuit court of their right to testify. Indeed, they do not assert that the circuit court abridged their rights in any way. Rather, they assert that their attorneys' advice to them that they not testify coupled with the failure to call the other witnesses the Kings thought would be testifying on their behalf **MAY** constitute ineffective assistance of counsel. Affidavits filed with the motion for post-conviction relief indicate that the Kings anticipated that other witnesses would be called on their behalf and that they predicated their decisions to accept the attorneys' recommendations against testifying on the expectation of the other witnesses' testimony. James Albert King stated that his attorney had told him it would be in his best interest not to testify because of his prior convictions and that if he did not testify, other witnesses would be called to build his defense. He further stated that he told his attorney that if the witnesses that had been subpoenaed were not called to the stand, he wanted to testify. Likewise, Johnny Wayne King stated that he told his attorney that if the other witnesses were not called, he wanted to testify. Ricky Grantham stated in his affidavit that he was subpoenaed, but was unable to testify on the Kings' behalf because he was not called. In her deposition, co-defendant Hattie Ray King wanted to testify on behalf of her husband and son, but was told that her testimony was irrelevant and would jeopardize her own chances for acquittal. She further stated that she heard both Johnny Wayne King and James Albert King advise their attorneys that they wanted to testify, and furthermore, that their attorneys advised them that they could not.

¶19. From the record, the question of whether the defendants' attorneys prevented them from testifying remains unanswered. The affidavits raise questions about whether more than trial strategy was involved. The Kings, therefore, should be afforded the opportunity for an evidentiary hearing on the limited issue of whether trial counsel was deficient in not allowing the Kings to testify on their own behalf after not calling the expected witnesses. Accordingly, I dissent.

**BANKS, J., JOINS THIS OPINION.**