# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00403-SCT

*LARRY BARDNEY*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 4/15/96 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | NOEL CROOK |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 11/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/1/997 |

**BEFORE DAN LEE, C.J., PITTMAN AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

On April 16, 1996, the Circuit Court of Humphreys County denied Larry Bardney's motion to vacate his conviction on two counts of murder. Aggrieved Bardney appeals to this Court, assigning as error the following issues:

    **I. WHETHER THE PLEA ARRAIGNMENT WAS HELD ACCORDING TO RULE 11 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.**

    **II. WHETHER BARDNEY RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL.**

    **III. WHETHER BARDNEY'S GUILTY PLEA WAS KNOWINGLY,**

**INTELLIGENTLY, AND VOLUNTARILY MADE.**

**IV. WHETHER THE TRIAL COURT INFORMED THE PETITIONER OF THE MAXIMUM AND MINIMUM SENTENCE THAT COULD BE IMPOSED.**

**V. WHETHER THE TRIAL COURT ERRED IN REFUSING TO HOLD AN EVIDENTIARY HEARING.**

**VI. WHETHER THE TRIAL COURT ERRED IN DENYING BARDNEY'S MOTION TO VACATE HIS CONVICTION AND SENTENCE UNDER THE POST CONVICTION RELIEF ACT.**

## FACTS

On September 24, 1994, the grand jury of Humphreys County indicted Larry Bardney for the murder of Patricia Young and Tommie Penn. On June 19, 1995, Bardney pled guilty to two counts of murder. At the guilty plea hearing, after explaining Bardney's Constitutional rights and determining that his plea was knowingly and voluntarily made, the trial judge sentenced him to two life sentences to run concurrently.

## DISCUSSION

Bardney's assertion that his arraignment was not conducted in accordance with Rule 11 of the Federal Rules of Criminal Procedure need not be addressed by this Court because the Federal Rules of Criminal Procedure are not binding in state courts. Even though Bardney raises five other issues to which he assigns error, his contentions can be aggregated into three central issues: whether he received effective assistance of counsel; whether his guilty plea was voluntary; and whether the trial court erred in refusing to hold an evidentiary hearing.

### I. WHETHER BARDNEY RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL.

Bardney alleges that his attorneys, Walter Stuckey and Whitman Mounger, acted incompetently by not having him psychologically evaluated before allowing him to enter a guilty plea. He states that the psychological stress engendered by his HIV positive status caused him to succumb to his attorneys' advice and enter a guilty plea. He contends that his attorneys' knowledge of his HIV positive status should have placed them on notice that he lacked the requisite mental capacity to enter a guilty plea. Bardney did not raise this issue in his motion for post conviction relief before the trial court. He now raises it for the first time in his brief to this Court. It is well established that this Court will not grant post conviction relief on facts or issues that should have been raised before the trial court. *Patterson v. State*, 594 So.2d 606,609 (Miss. 1992) *(citing Jefferson v. State*, 386 So.2d 200,202 (Miss 1980)) . Therefore, Bardney is procedurally barred from raising this issue in his present petition on appeal.

Bardney also claims that his attorneys provided ineffective assistance of counsel because they coerced him into pleading guilty. The test for ineffective assistance of counsel was set out in *Strickland v. Washington*, 466 U.S. 668 (1984). This Court adopted the *Strickland* test in *Gilliard v. State*, 462 So.2d 710, 714 (Miss. 1985). The *Strickland* test consists of two parts: (1) whether or not counsel's overall performance was deficient; and (2) whether or not the deficient performance, if any, prejudiced the defense. The defendant has the burden of proving both prongs of this test. *Edwards v.*

*State*, 615 So.2d 590, 596 (Miss. 1993).

Bardney claims that despite his protestations of innocence, his attorneys urged him to plead guilty. He claims that Stuckey told him he "didn't have a hair of a chance" and that he would receive the death penalty if he did not plead guilty. These contentions are not supported by the record. At the arraignment, Mounger stated:

> We did not in any way, even indirectly, encourage Mr. Bardney to plead guilty. To the contrary. The first time that he indicated -- well, he has been maintaining his innocence steadfastly throughout the portion of the time he has been charged, ... And when he -- after being pressed -- he was indicating at one point this morning he wanted to enter a guilty plea, but then still maintained his innocence. So Mr. Stuckey and I both said, well that's fine Mr. Bardney, let's go to trial; it's set for Thursday, and we'll just continue in our preparation.

Mounger's statement reflects that Bardney's attorneys did not persuade him to plead guilty. In fact, Mounger's statement indicates that the attorneys were prepared to take this case to trial. Bardney claims that Mounger's statement "when pressed" indicates that Mounger and Stuckey pressured Bardney to plead guilty. However, when taken in context, Mounger's use of the phrase "when pressed", does not imply that he or Stuckey urged Bardney to enter a guilty plea. This is supported by the fact that Bardney replied that he understood all of his attorneys' statements and that he was entering his plea because he was guilty and for no other reason. The record simply does not reflect that Stuckey or Mounger in any way induced Bardney's guilty plea.

Bardney's inability to show that his attorneys induced his guilty plea or were otherwise deficient in their duties results in a failure to meet the first prong of the *Strickland* test. In fact, Bardney himself testified under oath that he was satisfied with the advice of his attorneys. There is a strong presumption that counsel's performance constitutes reasonable professional assistance. *Cole v. State*, 666 So.2d 767, 775 (Miss.1995) (*citing* **Frierson v. State**, 606 So.2d 604, 608 (Miss. 1992)). Bardney fails to overcome this presumption.

Even if Bardney could prove deficient performance of counsel, the second part of the *Strickland* test requires that he prove that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Cole*, 666 So.2d at 775 (*quoting* **Cabello v. State**, 524 So.2d 313, 315 (Miss. 1988)). Even if Bardney could prove that his counsel made errors, he would be unable to meet this part of the *Strickland* test. The state had an eyewitness, Lacasha Harris, who was prepared to testify that she saw Bardney standing over Penn making a stabbing motion. Harris could also testify that Penn ran from the attack, entered her house, and died. Harris then saw Young emerge from her neighbor's house screaming and saw Bardney chase Young back into the house where she was later found dead. In addition, the state had a witness, Tommy Lee Ford, who was prepared to testify that several hours before the murders, he saw the defendant wearing the shirt found at the scene of the crime. Another witness, Roy Thompson, would have testified that he had seen Bardney with Young on the night of the murders wearing the shirt found at the scene of the murders. Lara Hampton was also scheduled to testify. Hampton would have testified that she had seen Bardney the morning after the murders covered in blood and that he explained the blood by saying that he had gotten into a fight. Further, the state could produce evidence that Penn's

blood type was found on Bardney, and that blood found near the scene of the crime matched Bardney's blood type. Clearly, the state had an overwhelming amount of evidence against Bardney. Even if his attorneys had performed perfectly, it is unlikely that the outcome would have differed. Thus, Bardney's claim of ineffective assistance of counsel also fails to meet the second prong of the *Strickland* test.

## II. WHETHER BARDNEY'S GUILTY PLEA WAS KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE.

Bardney contends that his guilty plea was not knowingly, intelligently, and voluntarily made. He claims that the mental anguish induced by his illness caused him to submit to his attorneys' requests and plead guilty. This Court does not discount the mental anguish engendered by Mr. Bardney's illness; however, mental anguish is insufficient to prove that a guilty plea was involuntary. In order to establish that a guilty plea was involuntary, the defendant must prove that he did not understand "what the elements are in the charge against him, including an understanding of the charge and its relation to him, the effect of the plea, and the possible sentence." *Taylor v. State*, 682 So.2d 359, 362 (Miss. 1996). Bardney has not met this standard. The record reflects that the trial judge informed Bardney of his Constitutional rights and the implications of entering a guilty plea. The lower court further determined that Bardney understood the charges against him, and that no one had coerced him into pleading guilty. Clearly, according to the record, Bardney understood the charge, its relation to him and the consequences of pleading guilty.

Bardney also alleges that the lower court failed to tell him the minimum and maximum sentence that could be imposed for his crime. This is simply untrue. Bardney answered affirmatively when the judge specifically asked him:

> You understand that this Court can give you -- well, the minimum or the maximum fine this Court can give you on each of these counts is life in prison?

Bardney was indicted for murder as defined in Mississippi Code Annotated § 97-3-19. The punishment for murder is designated in § 97-3-21 which states: "Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary." Miss. Code Ann. § 97-3-21 (1994). Indeed, the trial judge was correct in advising Bardney that the minimum and maximum sentence that could be imposed was life in prison. Thus, Bardney's argument that he was not informed of the minimum and maximum that could be imposed is completely without merit.

The record reflects that Bardney's guilty plea was voluntary according to the standard in *Taylor*. Bardney understood the charges against him, the effect of his plea, and that the sentence was life imprisonment. Thus, Bardney's claim that his plea was involuntary is denied.

## III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO HOLD AN EVIDENTIARY HEARING.

Bardney asserts that the trial court erred in denying his request to hold an evidentiary hearing to determine if his conviction should be vacated. Evidentiary hearings are usually required when contradictory affidavits place a material fact in dispute. *Harris v. State*, 578 So.2d 617, 620 (Miss.

1991). However, no evidentiary hearing is required when "unimpeachable documentary evidence" in the record discredits the defendant's affidavits. *Harris*, 578 So.2d at 620. In the case sub judice, the record reflects that Bardney testified under oath that he was satisfied with the advice of counsel, and that he was not coerced into entering a guilty plea. Additionally, Bardney stated that he understood the charges against him and that he would receive a life sentence. Bardney also testified under oath that he did not dispute the evidence the state announced it would put on at trial and that he was pleading guilty because he was guilty and for no other reason. Finally, the record reveals that Bardney signed a petition to enter a plea of guilty to both murders. Bardney admitted in this petition that he had killed both Tommie Penn and Patricia Young.

It is the opinion of this Court that the record reflects substantial unimpeachable evidence that refutes the defendant's affidavits. Therefore, according to *Harris*, the trial court did not err in refusing to conduct an evidentiary hearing.

## CONCLUSION

Bardney failed to bring a claim upon which post conviction relief could be granted. He did not establish that he received ineffective assistance of counsel, that his plea was involuntary or that he was entitled to an evidentiary hearing. Consequently, this Court affirms the lower court's denial of post conviction relief.

**LOWER COURT'S DENIAL OF POST CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR.**