560 So.2d 148 (1990)
William E. SCHMITT
v.
STATE of Mississippi.
No. 07-KA-58494.
Supreme Court of Mississippi.
February 28, 1990.
Rehearing Denied April 18, 1990.
*149 Lisa P. Dodson, Hopkins & Anderson, Gulfport, for appellant.
Mike C. Moore, Atty. Gen., Pat Flynn, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PITTMAN, Justice, for the Court:

I.
William E. Schmitt entered guilty pleas on two (2) counts of fondling and nine (9) counts of sexual battery in the Circuit Court of Harrison County, Mississippi. He was sentenced to twenty (20) years' imprisonment in the aggregate. Schmitt filed a Motion for Post-Conviction Relief alleging that his pleas were involuntary on two (2) grounds: (1) ineffective assistance of counsel in the plea bargaining process, and (2) promise of a suspended sentence.
A full evidentiary hearing was conducted on Schmitt's motion. The trial judge found *150 that Schmitt had received effective assistance of counsel at all relevant phases of the criminal proceeding and that the pleas had been freely and voluntarily entered. From this ruling Schmitt perfected appeal to this Court. We affirm.

II.
William E. Schmitt's wife, Joanne, had two daughters by a previous marriage who lived in the home with them. For the purposes of this opinion, the minor girls shall be known as Ann and Bea. In October of 1982 Joanne Schmitt returned home from work earlier than usual and found her husband and Ann in the act of sexual intercourse. Ann was sixteen.
Joanne Schmitt contacted the Crisis Center in Gulfport, Mississippi and was referred to the Harrison County Department of Public Welfare. Ann entered counseling, and Joanne and William Schmitt entered therapy. Thereafter, Joanne Schmitt contacted the Gulfport Mental Health Center. She and William Schmitt entered therapy with the clinician with the Center. William Schmitt terminated his therapy after several visits.
On August 18, 1983, Joanne Schmitt once again contacted the Harrison County Department of Public Welfare. She informed them that no other sexual abuse had occurred, but other problems had developed and requested assistance in making plans to leave William Schmitt.
The day after Thanksgiving, 1983, Joanne Schmitt learned from Ann that William Schmitt had been "threatening" Bea. Joanne confronted Bea with this information. Bea told her mother that William Schmitt, her stepfather, had been sexually abusing her since October of 1979.
William Schmitt moved out of the home in December of 1983 and had no further contact with the family. Joanne Schmitt filed for a divorce and filed criminal charges against William Schmitt alleging the rape of Ann and sexual molestation of Bea.
William Schmitt was indicted May 18, 1984, on four (4) counts of fondling Bea and nine (9) counts of sexual battery against Ann. Schmitt retained counsel and entered not guilty pleas to all charges on June 21, 1984. Two (2) of the fondling charges were subsequently dismissed as being barred by the Statute of Limitations.
Schmitt waived his right to trial by jury. Trial on the eleven (11) remaining charges was scheduled for September 28, 1984. On the day trial was to commence Schmitt's counsel filed a Motion to Consolidate the eleven (11) charges and a Motion for Continuance. Although the Motion for Continuance was conceded by the State, Schmitt nevertheless, that day, withdrew his pleas of not guilty and entered pleas of guilty to all eleven (11) charges. Sentencing was deferred pending receipt of a pre-sentence investigation report from the Mississippi Department of Corrections.
Sentencing was had January 18, 1985. Schmitt was sentenced as follows: ten (10) years on each of the two (2) fondling charges to run concurrently; ten (10) years on each of the nine (9) sexual battery charges, to run concurrently. The sexual battery sentences were to run consecutively to the fondling sentences, giving Schmitt a total sentence of twenty (20) years.
Schmitt's counsel filed a motion for the court to retain jurisdiction and reconsider the sentence on January 22, 1985. No action was taken on this motion.
Schmitt filed pro se motions for relief under the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-1 et seq. (effective April 17, 1984) on March 10, 1986 and April 3, 1986. Schmitt asked for relief on the basis that his pleas were involuntarily made for two (2) reasons: (1) ineffective assistance of counsel and (2) promise of a suspended sentence.
A hearing on Schmitt's motions was conducted on August 29, 1986, in the Circuit Court of Harrison County. At this time Schmitt had new counsel. Following receipt of all the evidence, the court took the matter under advisement.
On February 23, 1987, the court entered its Order dismissing Schmitt's motion for post-conviction relief. Specifically, the *151 court found that Schmitt's guilty pleas had been entered freely and voluntarily without any threats or promises and that Schmitt had received effective assistance of counsel at every stage of the judicial proceedings. From that Order and judgment Schmitt perfected this appeal.

III.
This appeal deals with the voluntariness of Schmitt's pleas. "The question whether a plea of guilty was a voluntary and knowing one necessarily involves issues of fact." Sanders v. State, 440 So.2d 278, 283 (Miss. 1983).
The trial court in the case sub judice, sitting without a jury, held an evidentiary hearing to determine the voluntariness of Schmitt's pleas. Under these circumstances, our standard of review is well settled: this Court will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous. Reynolds v. State, 521 So.2d 914, 918 (Miss. 1988); Merritt v. State, 517 So.2d 517, 520 (Miss. 1987).
If a trial court sitting without a jury fails to make some specific findings of fact, this Court will infer that such findings were resolved in favor of the Appellee. Pace v. Owens, 511 So.2d 489, 491-92 (Miss. 1987) and cases cited therein. No such inference or assumption is applicable, however, when the trial court fails to make any findings of fact whatsoever. Pace v. Owens, 511 So.2d 489, 492 (Miss. 1987); Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236, 238 (Miss. 1987).
Schmitt had the burden of proving the involuntariness of his guilty pleas by a preponderance of the evidence at the evidentiary hearing on his motions. Leatherwood v. State, 539 So.2d 1378, 1381 n. 4 (Miss. 1989); McClendon v. State, 539 So.2d 1375, 1378 (Miss. 1989); § 99-39-1 et seq., Miss. Code Ann. (effective April 17, 1984). This Court will not hesitate to reverse, and gives no deference to findings of the trial court, if the trial court applied the wrong legal standard in reaching its decision. McClendon v. State, 539 So.2d 1375, 1377 (Miss. 1989); Detroit Marine Engineering v. McRee, 510 So.2d 462, 467 (Miss. 1987); Bell v. City of Bay St. Louis, 467 So.2d 657, 661 (Miss. 1985).

A. DID THE CIRCUIT COURT ERR IN FINDING THAT SCHMITT'S GUILTY PLEAS WERE MADE FREELY AND VOLUNTARILY AND WERE NOT INDUCED BY PROMISES OR COERCION?
At the hearing on Schmitt's motions for post-conviction relief, Schmitt testified that the day his trial was to begin he was sitting in the hallway of the courthouse, waiting to go into the courtroom. He stated that a few minutes before his trial was to be called, Attorney Wusnack came out from the back of the courthouse and told Schmitt that he had just come from Judge Thomas' court, and that if he would plead guilty to all the charges, Judge Thomas would give him a suspended sentence. According to Schmitt:
I protested at that time because I was not guilty of the sexual battery charge, I was not guilty of the fondling, I did not want to do it. He more or less told me to hold my pride, also added that if I didn't do it I could look for a Court appointed lawyer, he kind of said they weren't too good because they got anybody who walked in the door and there was a lot of stress on me. Prior to that I had been going to the Mental Health and one of the things they were telling me and I was going along with it at that moment, I had been under a lot of pressure and people had surrounded me with the pressure from my ex-wife and phone calls and harassment, and the kids were getting a lot of pressure I'm sure and one of the things they were telling me was not to put the family through more stress for me to take responsibility and to some how resolve the thing so that nobody would get hurt any further. He then instructed me at that point at that point ... that the judge would ask me if I had a plea bargain or a promise and I was instructed to say no. He said that the judge would be  act very harsh and tough and aggressive, mainly to put on a *152 show for the prosecuting attorney who seemed to be not in on this.
Schmitt admitted that he had engaged in sexual relations with Ann, but insisted that the acts were with Ann's consent, and that he therefore was not guilty of sexual battery. Schmitt's claim that Ann's participation in the sexual acts was consensual is supported by her statement, reflected in the pre-sentence report, that she didn't know that having intercourse with her [step]father was viewed as immoral by society.
Schmitt denied ever having fondled Bea, but insisted that even if the alleged incidents took place, he could not be legally guilty of fondling, as Bea was fourteen at the time of the alleged incidents and the fondling statute applies only to persons under the age of fourteen. See Miss. Code Ann. 97-5-23 (Supp. 1983). Schmitt stated that in the hearing on his guilty plea he admitted to the fondling and sexual battery charges only because his attorney told him that the judge would not accept his guilty plea if he did not admit all the charges.
Judge James E. Thomas, the judge who accepted Schmitt's guilty pleas and sentenced him, testified that he had made no promise to Schmitt or to to his attorney regarding sentencing. He stated that he relied on the pre-sentence report and the information obtained at the plea and sentencing hearings in sentencing Schmitt. He stated that he never considered Schmitt's case to be an appropriate one for probation.
Attorney Wusnack testified that he made no promises to Schmitt regarding his sentence, and that he did not think that he misled Schmitt regarding his guilty plea. Wusnack testified that he had not prepared for trial, because he knew well in advance that Schmitt was going to plead.
Judge Vlahos questioned Wusnack as to why he had Schmitt plead the same day that he had moved for a continuance. Wusnack explained that the motion for continuance was filed to continue the plea, not to continue the trial. He said that when he learned that the State was going to ask for the maximum time on each charge, he felt he needed more time to work on the plea.
Schmitt relies on Sanders v. State, 440 So.2d 278 (Miss. 1983), in which this Court stated:
Where a plea of guilty has been intelligently and voluntarily entered, it is sufficient to undergird an unassailable final judgment of conviction. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). On the other hand, where the plea is involuntary any judgment of conviction entered thereon is subject to collateral attack. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[5-8] The question whether a plea of guilty was a voluntary and knowing one necessarily involves issues of fact. Advice received by the defendant from his attorney and relied upon by him in tendering his plea is a major area of factual inquiry. Chavez v. Wilson, 417 F.2d 584, 586 (9th Cir.1969). For example, counsel's representation to the defendant that he will receive a specified minimal sentence may render a guilty plea involuntary. Mosher v. Lavallee, 491 F.2d 1346 (2d Cir.) cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974). Where defense counsel lies to the defendant regarding the sentence he will receive, the plea may be subject to collateral attack. Where defense counsel advises the defendant to lie and tell the court that the guilty plea has not been induced by promises of leniency (when in fact it has), the plea may be attacked. The law is clear that where the defendant receives any such advice of counsel, and relies on it, the plea has not been knowingly and intelligently made and is thus subject to attack. Burgin v. State, 522 S.W.2d 159 (Mos.App. 1975).
440 So.2d at 283-84. (Footnotes omitted). The State also relies on Sanders v. State, but for the proposition that a defendant, seeking post-conviction relief on the ground of an involuntary guilty plea, bears the burden of proving by clear and convincing evidence that his plea was not voluntary. Further, the standard of clear and convincing was changed by the legislature in the *153 Post Conviction Collateral Relief Act and such change was adheared to by this Court in McClendon v. State. Both statute and McClendon v. State now hold that the standard is a "preponderance of the evidence."
In Gilliard v. State, 462 So.2d 710 (Miss. 1985), this Court stated:
In order to meet constitutional standards, a guilty plea must be freely and voluntarily entered. It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it involves him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty. Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108
462 So.2d at 712. As the States notes, Judge James Thomas, who accepted Schmitt's guilty pleas, carefully followed the formula stated in Gilliard, as shown by the following exchange with Schmitt:
THE COURT: Has any body forced you to plead guilty?
A. No, sir.
THE COURT: Threatened you or promised you anything?
A. No, they have not.
THE COURT: Do you know of anything wrong with you today that would prohibit you or stop you or hinder you in any way from pleading guilty?
A. No, your Honor.
THE COURT: Have you discussed all of these cases with your attorney?
A. Yes, I have.
THE COURT: Have you told him everything you know about the facts of each one of these cases?
A. Yes, I have.
THE COURT: Are you satisfied with his services?
A. Very much so.
THE COURT: We have ten [eleven] cases. Two counts of fondling and eight [nine] counts of sexual battery. The fondling charges, if I recall, are ten years and the sexual battery carry a potential of thirty on each charge.
By law I can, if I desire to do so, sentence you to the maximum sentence on each case and stack them one on top of the other. By doing such that would be 260 [290] years in the state penitentiary that I could give you if I wish to do so, do you understand that?
A. Yes, sir.
THE COURT: You need to understand that regardless of any recommendation made to me by the State or by your attorney, regardless of any request of leniency for you made to me, I do not have to follow it. I can sentence you to the maximum sentence, do you understand that?
A. Yes, sir, I understand.
THE COURT: I am sure your attorney has told you considering the nature of these charges, I am not inclined to consider a probationary sentence, at least right now, at all, do you understand that?
A. Yes, sir, I understand that.
THE COURT: Realizing that, do you tell me that you still wish to plead guilty?
A. Yes, I do, your Honor.
Schmitt also argues that the voluntariness of his plea was affected by the pre-sentence report, which he alleges contained incorrect information. This argument is totally implausible, as Schmitt's guilty pleas were entered before the trial judge even ordered a pre-sentence report.
Schmitt failed to show by a preponderance of the evidence, as required under McClendon v. State, 539 So.2d 1375, that his pleas were involuntary. There is evidence to suggest that Attorney Wusnack did influence Schmitt at the last minute to enter pleas of guilty. However, Mr. Schmitt is an educated man, with a Bachelor's degree in Forestry. Even if his attorney had led him to believe that he was to receive a suspended sentence, Judge Thomas' remarks were sufficient to put him on notice that he was not likely to receive a suspended sentence. There is no merit to this assignment of error.

*154 B. DID THE CIRCUIT COURT ERR IN FINDING THAT SCHMITT RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL AT ALL RELEVANT STAGES OF THE PROCEEDINGS?
Schmitt contends that he was not effectively represented by counsel prior to and after his guilty plea. Specifically, Schmitt claims:
1. Counsel failed to adequately prepare for trial.
2. Counsel allowed Schmitt to plead guilty to fondling a child under the age of fourteen years, when the victim was fourteen or older at the time the alleged fondling occurred.
3. Counsel failed to adequately address the pre-sentence report.
4. Counsel failed to follow through on a post-sentence motion for the court to retain jurisdiction and reconsider sentence, yet did not withdraw as counsel.
The standard for determining whether or not a defendant was afforded effective assistance of counsel was set out by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Before counsel can be deemed to have been ineffective, it must be shown (1) that counsel's performance was deficient, and (2) that the defendant was prejudiced by counsel's mistakes. 466 U.S. at 687, 104 S.Ct. at 2064. See Gilliard v. State, 462 So.2d 710 (Miss. 1985). Although Strickland v. Washington dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, the same two-part standard is applicable to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S.Ct. 366, 369-370, 88 L.Ed.2d 203 (1985). See Leatherwood v. State, 539 So.2d 1378 (Miss. 1989).
Under Strickland, there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
Schmitt's first complaint is that counsel failed to properly investigate and prepare his case. Schmitt stated at the hearing on his motions for post-conviction relief that he repeatedly told Attorney Wusnack that he did not have sexual intercourse with Ann on the dates charged in the indictments (except for one date [R. 300]), and that he had records to prove it. According to Schmitt, Wusnack did not seem interested in seeing those records. Wusnack testified that he chose not to prepare a defense based on alibi because Schmitt had admitted to him that he had a sexual relationship with Ann over a period of time.
To meet the first half of the Strickland v. Washington test, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. at 2064. "Along with the presumption that counsel's conduct is within the wide range of reasonable conduct, there is a presumption that decisions made are strategic." Leatherwood v. State, 473 So.2d 964 (Miss. 1985). It was not unsound trial strategy for Schmitt's counsel to fail to pursue an alibi defense, where Schmitt had admitted to the offenses, but challenged the dates as being incorrect. Under Rule 2.05(5) of the Uniform Criminal Rules of Circuit Court Practice, failure to state the correct date of the alleged offense will not render an indictment insufficient. Furthermore, if Schmitt's counsel was truthful in stating that Schmitt had intended all along to plead guilty, of course there was no need to prepare any defense.
Schmitt also complains that Wusnack failed to obtain deposition testimony from the two girls as promised, for use in evaluating potential defenses. Schmitt had insisted to Wusnack that Ann was a willing participant in the sexual acts, and Schmitt *155 had discussed with Wusnack a possible defense of consent. Wusnack testified that he filed notice of deposition for Mrs. Schmitt and Ann in the divorce proceedings which were pending at that time, hoping to discover information that would be helpful in Schmitt's criminal case, but was advised by Mrs. Schmitt's attorney, that he was going to oppose deposition and have a protective order entered if Wusnack went any further with the matter. Wusnack stated that he believed that the attorney for Mrs. Schmitt would be successful, so he did not proceed any further.
This claim fails under the first prong of the Strickland test. Whether Ann's participation in the sexual acts was consensual was a matter as well known to Schmitt as it was to Ann, and Schmitt testified that he had discussed this matter with his counsel. "[W]hen the facts that support a potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." Strickland, 466 U.S. at 691, 104 S.Ct. at 2066.
Schmitt next claims that Wusnack allowed him to plead guilty to fondling a child under the age of fourteen years, when in fact the child, Bea, was fourteen or older and Wusnack knew it. Schmitt cites from the transcript of the hearing on Schmitt's guilty pleas the following exchange between the trial judge and Wusnack:
THE COURT: Bea is 14 or was 14 when this happened?
MR. WUSNACK: That is correct.
The State responds that it is inconceivable that Schmitt, a college graduate whose freedom was at stake, could have read the indictments at issue and ignored the "under fourteen" language if his stepdaughter had been, in fact, fourteen or older. The State also notes the improbability that Wusnack, had he been advised that Bea was at least fourteen years of age, would have ignored this information, while at the same time attacking successfully two of the fondling indictments as barred by the Statute of Limitations. While acknowledging that the record is confusing as to Bea's age, the State contends that the burden of showing Bea's correct age was on Schmitt, and he failed to meet that burden. At the hearing below for post-conviction relief, Schmitt made absolutely no effort to establish or prove the age of the youngest of the victims of his abuse even though this fact would have been fatal to the charge. There was speculation by Schmitt's new counsel as to the age of the child and this point was argued at the hearing before this Court, but it is passing strange that when he had the opportunity to offer evidence to establish the child's age beyond speculation that the petitioner chose not to do so.
Schmitt next claims that Wusnack failed to properly address the pre-sentence report, in that there were serious allegations in the report which Wusnack did not attempt to verify. This claim, of course, has no application to the guilt phase of Wusnack's trial, as the pre-sentence report was not ordered by the trial judge until after Schmitt had entered his guilty pleas. Wusnack received a copy of the pre-sentence report the morning of Schmitt's sentencing hearing. There was no objection offered at the sentencing hearing by Schmitt or his attorney to the report. Again, Schmitt is a college graduate, presumably able to read and understand what he is reading.
Some of the information which Schmitt now claims was false was alluded to by his attorney during the hearing, after which the judge asked Mr. Schmitt if he had anything to say. Schmitt did not take the opportunity of correcting any false impression which the judge may have had. He said only that the counseling program was helping him to "see a future, a way to pass this and make sure this type thing never happens again," thereby reinforcing his plea of guilty. He had every opportunity to clear up any inaccuracies after hearing them discussed, and yet he allowed the report to stand. Finally, Schmitt complains that counsel failed to follow up on his motion to the trial court to maintain jurisdiction and reconsider sentence. While this allegation is admitted by Wusnack, it has *156 nothing to do with the voluntariness of Schmitt's guilty pleas or with Wusnack's representation of Schmitt during trial preparation and through sentencing. Nor does any of Schmitt's other allegations regarding Wusnack's conduct after sentencing bear on the issues of the voluntariness of Schmitt's pleas, or the effectiveness of Wusnack's representation at any stage up to Schmitt's conviction and sentencing. For example, the fact that Wusnack refused to take any further action on Schmitt's case after Schmitt's sentencing, yet failed to file a motion to withdraw as counsel, has no bearing on Schmitt's motion for post-conviction relief.

CONCLUSION
In essence, Schmitt is asking this Court to set aside his guilty pleas as having been made involuntarily and without effective assistance of counsel.
While there was testimony which might indicate that Wusnack did not render effective assistance of counsel, the circuit judge, after a full hearing, found that Schmitt did receive effective assistance of counsel throughout the judicial proceedings. A finding that a defendant received effective assistance of counsel is a factual one, and this Court will not set aside such a finding unless it is clearly erroneous. Merritt v. State, 517 So.2d 517 (Miss. 1987). It must be stated that William E. Schmitt, age 53, was Executive Director of Equipment Maintenance Council (heavy equipment consultants). He had received a Bachelor's degree in Forestry from the University of Idaho. He was indicated May 18, 1984, but he was not incarcerated. His sentence date was January 18, 1985. He had the opportunity to consult with his attorney or to consult with any other attorney concerning the charges pending against him. Prior to entering a guilty plea, the petitioner had a long-standing knowledge of the charges and a notice and understanding of the severity of the charges and should have had an understanding of the severity of potential punishment. The petitioner was first accused in October of 1982 of having sexual intercourse with his sixteen-year-old stepdaughter. As a result of the accusation, he sought counseling and underwent therapy at the Mental Health Center at Gulfport, and he had contact with other institutions all of which should have assisted the petitioner in intelligently weighing the consequences of the charges and of a plea of guilty. Of course, the petitioner had the attorney of his choice. At the time of entering his plea of guilty, he was specifically asked whether or not he was satisfied with his attorney's service and responded "very much so". Even though he had the opportunity of seeking additional legal assistance, he failed to do so and that indeed during the interim between indictment and sentence his counsel successfully moved to quash two of the original indictments and performed other duties for and on behalf of the petitioner Schmitt. The filing of motions and the withdrawal of motions are not unusual in a criminal case when the attorney for the defendant is attempting to gain the very best sentence possible, especially when there appears to be overwhelming evidence against the defendant. In this case the petitioner admitted engaging in sexual intercourse with the older of his two stepdaughters. Only here does he argue that it was with consent and therefore does not violate the statute. This Court should note that Schmitt is a man of some business knowledge with a substantial education, and that in open court he withdrew his plea of not guilty and that he answered extensive questions of the trial judge without once suggesting that he did not fully understand the occasion. Mr. Schmitt for some time prior to indictment and the changing of his plea had sought and received counseling in regard to the subject of child sexual abuse. He should have understood the charges and the consequences.
This Court would hope for every defendant excellent representation at the trial court level, and we would hope for every petitioner his opportunity to be heard at the trial level, but this petitioner chose to enter his plea of guilty. This petitioner chose to employ counsel that he employed and he chose to keep through many months *157 of both criminal and domestic litigation his attorney of the first instance. This petitioner chose not to prove through proper evidence the age of the youngest of his victims. This petitioner apparently knowingly, willfully, freely, and voluntarily, personally chose to abort the trial below by announcing in open court that he desired to change his plea from not guilty to guilty and at that instance raise no complaint about counsel or about the judicial proceedings. For that reason this Court affirms the dismissal of Schmitt's Motion for Post-Conviction Relief.
LOWER COURT'S DENIAL OF POST-CONVICTION RELIEF AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER and ANDERSON, JJ., concur.
DAN M. LEE, P.J., dissents by separate written opinion, joined by ROBERTSON, SULLIVAN and BLASS, JJ.
BLASS, J., dissents by separate written opinion joined by DAN M. LEE, P.J.
DAN M. LEE, Presiding Justice, dissenting:

I.
Today we are called on to determine whether an attorney's representation, which resulted in guilty pleas to very serious charges, was so egregious as to amount to ineffective assistance of counsel. In all cases before this Court, our first responsibility is to ensure the proceedings below were fair and impartial. Toward that end, we often hear pleas of ineffective assistance of counsel. In those instances where counsel's representation has been characterized as ineffective, we are duty-bound to examine that representation carefully and thoroughly.
The attorney in this case revealed his attitude toward his client throughout the proceedings below in a letter, directed to his client, in which he declared: "I don't need this kind of crap and I'm sure as hell not going to take it from you! ... Please don't bother to answer this letter as I am sending everything you mail to me back to you unopened." This attitude is clearly reflected in the record before us which is replete with evidence of ineffective assistance. After a careful and thorough study of the record, I believe the appellant did not receive effective assistance of counsel at all relevant stages of the proceedings below and, therefore, I respectfully dissent.

II.
Effective assistance of counsel encompasses, among other things, advice to the client. Where, as here, "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice `was within the range of competence demanded of attorneys in criminal cases.'" Coleman v. State, 483 So.2d 680, 682 (Miss. 1986), quoting Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) and cases cited therein. Seriously mistaken advice of counsel may render a guilty plea legally involuntary. See Leatherwood, 539 So.2d 1378, 1385-87 (Miss. 1989); Gardner v. State, 531 So.2d 805, 809 (Miss. 1988); Coleman v. State, 483 So.2d 680, 682 (Miss. 1986); Williams v. State, 473 So.2d 974 (Miss. 1985); Tiller v. State, 440 So.2d 1001, 1006 (Miss. 1983); Sanders v. State, 440 So.2d 278, 284 (Miss. 1983); Baker v. State, 358 So.2d 401, 403 (Miss. 1978).
In assessing the performance of an attorney, "every effort [must] be made to eliminate the distorting effects of hindsight." Leatherwood, 473 So.2d at 969, quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. As the majority correctly points out, this issue involves issues of fact. Sanders v. State, 440 So.2d 278, 283 (Miss. 1983). Leatherwood v. State, 473 So.2d at 970. With these standards in mind, a thorough recitation of the facts regarding each prong of the Strickland test is warranted.

A.
The first step in determining ineffective assistance is a showing of deficient performance. Strickland v. Washington, 466 *158 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first complaint addressed is that counsel failed to properly investigate and prepare his case.
Schmitt admitted to his trial counsel that he had engaged in sexual relations with Ann, but insisted that the acts were with her consent. It is undisputed that Ann and Bea were allowed to run around the house nude. The record also indicates that Ann was particularly fond of Mr. Schmitt and that "almost from the beginning [Ann] found herself competing with Mrs. Schmitt in the role of the caregiver for Mr. Schmitt." Often, when Mr. and Mrs. Schmitt were sitting close, Ann would "literally wedg[e] herself between the two of them."
Schmitt's claim that Ann's participation in the sexual acts was consensual is supported to some extent by her statement, reflected in the pre-sentence report, "that she didn't know that having intercourse with her [step]father was viewed as immoral by society." On January 6, 1983  approximately three (3) months after Mrs. Schmitt discovered Mr. Schmitt and Ann together  a case worker from the Harrison County Department of Public Welfare visited in the Schmitt home. Her "Record of Contact" from that visit indicated that the relationship between Mrs. Schmitt and Ann was strained. Her notes indicate that Mrs. Schmitt was concerned "as to whether or not [Ann] really does want to terminate the relationship with the stepfather." The record also discloses that Ann discontinued her sessions at the Mental Health Clinic and refused to go back. She told a case worker who visited the Schmitt residence on July 6, 1983, that she was not having any problems with her stepfather making sexual advances toward her, and that she did not intend to follow up on counseling. In closing Ann's case, the worker wrote: "[Ann] seems capable of controlling her situation and there is not the danger of being sexually abused."
Counsel freely admits that he and Schmitt discussed these facts, yet counsel made no meaningful attempt to investigate. In fact, the record is clear that at the moment Schmitt's counsel determined that verification of this information with Ann was going to be difficult, he dropped the entire matter. The majority finds nothing offensive about counsel's actions regarding the defense of consent and concludes that the failure to investigate this defense did not meet the first prong of the Strickland test. What the majority fails to recognize is that consent is an absolute defense to the charges of sexual battery. Failure to investigate an absolute defense is, in my opinion, ineffective assistance.
Schmitt claims that he was allowed to plead guilty to fondling a child under the age of fourteen (14) years when, in fact and known to counsel, the child in question was fourteen (14) at the time of the alleged incidents. The fondling statute under which Schmitt was indicted applies only to persons under the age of fourteen (14). See Miss. Code Ann. § 97-5-23 (Supp. 1983).
Schmitt's counsel testified that he did not remember whether Schmitt ever mentioned to him that Bea was fourteen at the time when the fondling incidents allegedly occurred. When questioned whether he ever did any investigation or sought any discovery to determine Bea's correct age he either evaded the questions or indicated he had investigated and found the age to be sufficient. He also testified that the statutory age had been raised "so that had been [sic] somebody been 14 it might not have mattered, but as I understand it, I'm foggy on this."
Schmitt's counsel subjected Schmitt to a lie detector test in August, 1984. On the basis of that test counsel concluded that "he [Schmitt] started out by telling me partial truth and then... I discovered that the second aspect of this defense that he did not do [fondle] was not true."
The record reflects that counsel apparently was aware that Bea may have been older than the "under fourteen" required in § 97-5-23. The following exchanges took place between the trial judge and Schmitt's attorney during the hearing on the guilty pleas:
BY THE COURT: [Bea] is 14 or was 14 when this happened?

*159 BY COUNSEL: That is correct.
* * * * * *
BY THE COURT: When did it start with [Bea]? When did these incidents occur? How old was [Bea]?
BY COUNSEL: She was 14 or 15 according to the indictment.
The indictments charging Schmitt with fondling correctly recite the "under the age of fourteen (14)" language from the statute. In receiving Schmitt's pleas, however, the trial court mis-stated the indictment: "... that you fondled one [Bea] when she was 14 years old." (emphasis added).
Again the majority finds nothing ineffective about Schmitt's counsel's failure to investigate this absolute defense. Instead, the majority puts the entire burden upon Schmitt individually who, we are repeatedly told, is a very well educated man. The majority finds it strange that such a well educated man offered no evidence of Bea's age when given the opportunity. The majority, I submit, is overlooking the crux of the problem: Schmitt had an attorney whose duty it was to fully represent and guide him through the intricacies of the legal system. Having selected what he considered competent counsel to represent him, and after fully discussing the situation with his counsel, Schmitt had every right to believe that his attorney would properly investigate and fully protect his interest. Unfortunately for Schmitt, he did not choose well. I do not find it strange that no evidence regarding Bea's age was forthcoming; how could it have been? Schmitt's counsel had not investigated the issue.
Notwithstanding the information regarding possible absolute defenses to the charges, counsel sent Schmitt to treatment knowing that the first step was to admit and fully accept culpability. In counsel's own words, he "didn't see what the problem was with that since he [Schmitt] had admitted to me that he had done them." Counsel later clarified this statement, and his position in the defense of Schmitt:
... when you are defending this type of case there are two ways to go; if the client is guilty, and of course you know that immediately because if you sit down and talk to him and are honest with them and get the honest answers back and advise him how important it is to tell the truth then you go the treatment route and I have had cases since Mr. Schmitt's where I have had people who have admitted guilt and we have gone the treatment route, in fact, the District Attorney's office is not aware of these because they have been taken care of at the Family Court level; because of the client's wishes to go the treatment route to admit that they were wrong. On the other hand, if a persons says, "I didn't do this." Then we treat it like any other criminal case, we go to Court with everything that we have got, we find  we use things like this date is not right and so forth. That wasn't the case in this case, he told me that he was guilty, he did these things, he did these acts. He might not have said I'm guilty of anything, "I did these acts." He never once said, "I'm guilty of doing these things." He said, "I did have sex with [Ann]." And after the polygraph he admitted to fondling [Bea]. He doesn't have to use the word, I'm guilty of it, he tells me that he did it then we have got to go the treatment route; there is no ifs, ands or buts about it. That's the only way we can do it and save him, not only from going to prison, but to get him straightened out in that respect. Then otherwise we are going  it's going to be really rough on him. If we try to go treatment when he's not guilty, which is ridiculous, or if we try to say he's not guilty when he is and he's going to be found guilty, then the recommendations are going to be stiff, the penalties are going to be heavy because has done nothing to alleviate the problem, it is kind of a catch 22 in these type of cases.
(emphasis added).
With reference to treatment, counsel testified: "I advised her [Ms. Alfonso  Assistant District Attorney] that I told Mr. Schmitt not to do anything until I told him to do it and then I immediately told him to go to treatment." (emphasis added). *160 By his own testimony counsel admits that he made the decision to send Schmitt into treatment.
When asked if he was prepared to go to trial, counsel testified: "No, we weren't prepared to go to trial because we weren't going to try the case. I advised Mr. Schmitt on many occasions that if we tried this case  ..." Counsel then turned around and stated, when asked if he intended to plead at the time Schmitt was went to treatment, "I didn't really intend to do anything until I exhausted every possible thing that I could think of to do at the time based on what I had at my disposal." This statement is questionable in light the previously recited facts of the following exchange during examination by Schmitt's current attorney:
Q. Did you communicate to Mr. Schmitt that that was the reason that you felt he ought to be in counseling, was that the District Attorney's office would give him a better recommendation and the Court would go easier on him if he could show that he was participating in this program?
A. I told him if he had any chance at all of us being able to get from the District Attorney's office a better recommendation that the first step would be to show he was going along with everything that the Gulf Coast Mental Health Center program on this particular aspect of mental health would provide. In answer to your question, yes. (emphasis added).
And again:
In this particular case, I had been advised by the District Attorney's office on many occasions that their prosecution of the case would entail the unwillingness of [Ann] to all these acts. That was  a lot of the advice you give to your client is given based on what you find out from the witnesses that the State has and call the police officer up and ask him what he's got and he says he hasn't got much or I've got this and that. At that particular time all the information that I had indicated that [Ann] was going to say that she was not willing. That she had been placed in fear, that she was threatened and so forth, which was opposite of what Mr. Schmitt said. I had to weigh the testimony of that little girl on the stand versus his testimony on the stand and determine what, in this particular case, a judge would believe or not believe because we were going to have two conflicting stories.
Fully aware of the State's position, and cognizant of the information from Schmitt that there were possible absolute defenses to the charges, Schmitt's former counsel not only failed to investigate and act with reasonable diligence and promptness in representing Schmitt as required by the Rules of Professional Conduct, he advised him to plead guilty:
Q. [By Assistant District Attorney] You advised your client that you felt it was best to plead guilty because you really had no choice in the matter?
A. We had absolutely no choice in the matter.

Q. Quite frankly, the State had you over a barrel in this case, did we not?
A. Yes.
Schmitt's former counsel was then questioned by the Court regarding the guilty plea:
Q. Whose idea was it to plead guilty?
A. I think it was his idea, your Honor, I told him that I thought if we went to trial on this matter that he would be found guilty and that I left  I never force anybody to plead guilty... .
* * * * * *
Q. Why would you go ahead with the plea if you had a continuance?
A... . We are asking really for a motion for continuance on a plea by this document right here. I think as early as the date of this, which is September 28th, it was determined by Mr. Schmitt and myself that he was going to plea [sic] to it... .
(emphasis added).
Schmitt testified that on the 28th of September, 1984, he arrived at the Harrison County Courthouse ready to go, and expected to go to trial. Only after conferring *161 with counsel in the hallway, being told to hold his pride, that he would receive a suspended sentence if he plead, and if he did not plead, he could look for a court appointed lawyer, Schmitt agreed to enter guilty pleas on all charges. Schmitt testified that he admitted all the fondling and sexual battery charges only because his attorney told him that the judge would not accept his guilty pleas if he did not admit all the charges. Regarding the plea process itself Schmitt said, "I do know that I had a hard time with saying I was guilty and talking about that, because I was not and I was suppose to say I was and I knew I was not and I had a very hard time handling that." Schmitt steadfastly maintains that as indicted, he is not guilty.
The relationship between Schmitt and his counsel broke down following sentencing. This breakdown is reviewed only because some of counsel's actions after the sentencing are indicative of his general attitude towards Schmitt and, in my opinion, lend credibility to Schmitt's allegations of ineffective assistance of counsel.
Counsel's attitude towards Schmitt is perhaps best summed up in a letter he wrote in response to Schmitt's inquiry as to why no progress had been made toward obtaining post-conviction relief as promised. Counsel's letter states, in part:
You state in your letter that I told you that the judge would give you probation if you were to plea [sic] guilty. This is not true and if you had been listening to me, you would know that it was not true. I never told you nor do I ever tell any of my clients that they will get probation, I only advise that probation is what the District Attorney is recommending, if, in fact, there is a recommendation of that kind. In your case, as you are well aware, there was not a recommendation by the state for any sentence other than the maximum sentence.
Which gets us to the real reason why you plead guilty. You are guilty!
I don't need this kind of crap and I'm sure as hell not going to take it from you! ...
Please don't bother to answer this letter as I am sending everything you mail to me back to you unopened.
Counsel's remarks reflect a disdain for Schmitt which suggests all the more his failure to function as an effective advocate for Schmitt.
The record is clear that Schmitt's counsel failed to make independent investigation into the facts and circumstances of Schmitt's case. He failed specifically to investigate Schmitt's claim that Ann consented to their sexual encounters. This would have been a complete defense to the charges of sexual battery. Miss. Code Ann. § 97-3-95(a) (Supp. 1989). He failed to investigate the law which would have reflected an absolute defense to the fondling charges because of Bea's age. These failures, along with counsel's overall failure to advocate Schmitt's cause, amounted to deficient performance. The first prong of the Strickland test was, I submit, amply met.

B.
The second prong of the Strickland test is prejudice. In order to satisfy this prong a defendant claiming ineffective assistance of counsel in the context of a guilty plea must show, by a preponderance of the evidence, that there is a reasonable probability that, had counsel's assistance been effective, he would not have plead guilty, but would have insisted on going to trial. Hill v. Lockhart, 474 U.S. at 59, 106 S.Ct. at 370.
If Schmitt's counsel had made an independent investigation into the potential absolute defense of consent, there is a reasonable probability that Schmitt would not have plead guilty to the nine sexual battery charges. Sexual battery is defined as sexual penetration with another person without that person's consent. Since Ann was older than fourteen years of age when the alleged incidents occurred, proof that her participation was consensual would have been an absolute defense to the nine (9) sexual battery charges.
Likewise, had counsel made an investigation to determine Bea's correct age, there is a reasonable probability that Schmitt *162 would not have plead guilty. Schmitt was charged with fondling a child under the age of fourteen. Proof that Bea was fourteen or older at the time of the alleged incidents would also have been an absolute defense to the fondling charges.
In certain Sixth Amendment contexts, there is a presumption of prejudice. Strickland, 466 U.S. at 692, 104 S.Ct. at 2067. Indeed, "[s]ome Sixth Amendment violations ... are so flagrant that no punctilious calibration of prejudice is necessary." Ferguson v. State, 507 So.2d 94, 97 (Miss. 1987). I submit that the actions of Schmitt's trial counsel in this case rises to the level of the presumption.

III.
Schmitt's counsel in the case sub judice was informed of the possibility of absolute defenses. Not only did he fail to investigate these absolute defenses, he sent Schmitt to a treatment center knowing that admission of full guilt and responsibility must be forthcoming and advised Schmitt that this was his only option to stay out of jail. "No inquiry need be made into the quality of counsel's advice. It is sufficient that the advice has subsequently been established as wrong in substantial particulars." Coleman, 483 So.2d 680, 683 (Miss. 1986).
In the context of this record, it is clear that at the plea process Schmitt's counsel was ineffective and Schmitt was prejudiced thereby. Beyond that, counsel's advice to Schmitt was seriously mistaken. The erroneous advice, coupled with counsel's failure to conscientiously fulfill his adversarial role, deprived Schmitt of his Constitutional right to effective assistance of counsel.
In accordance herewith, I respectfully dissent.
ROBERTSON, SULLIVAN and BLASS, JJ., join this dissent.
BLASS, Justice, dissenting:
I join in the dissenting opinion of Justice Dan Lee and add the following comments. This defendant has been sentenced to two consecutive ten-year terms. A birth certificate from the Bureau of Vital Statistics, an old school record, inquiry from family members or other simple investigation would have made the age of the younger child known and would have determined whether or not one of the alleged crimes was committed. No such inquiry was made. Neither was any inquiry made of the older girl's consent. I believe that both Strickland prongs have been met.
I have profound respect for the able trial judges who heard this matter and for the majority of this Court in this case, but the record is not clear that the statutes have been violated. It would not be difficult to find out. I would allow it to be done.
DAN M. LEE, P.J., joins this opinion.