## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-00896-SCT

*ANGELO HERNTON*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/07/95 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT ALLRED, III |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 10/23/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/13/97 |

**BEFORE SULLIVAN, P.J., ROBERTS AND SMITH, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

Hernton was indicted on February 3, 1995, for feloniously taking possession of three (3) pairs of pants from Cato's Department Store on January 2, 1995, and five (5) cartons of film from Wal-Mart on October 14, 1995. Hernton had previously been convicted for two counts of shoplifting on July 28, 1988, and one count of shoplifting on January 10, 1990. Since Hernton's previous three offenses for shoplifting occurred within seven (7) years of the January 2, 1995, and October 14, 1994, offenses, Hernton was charged under sections 97-23-93(6) and 99-19-81 of the Mississippi Code as a habitual offender. A conviction under section 97-23-93(6) carries with it a fine of not more than $1, 000 or up to five (5) years imprisonment, or both. Miss. Code Ann. § 97-23-93(6)(1994). However, section 99-19-81 provides that:

Every person convicted in this state of a felony who shall have been convicted twice previously

of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, *shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.*

Miss. Code Ann. § 99-19-81 (1994) (emphasis added). Therefore, when one is convicted under section 99-19-81, the maximum sentence must be given without the possibility for parole, *to wit*, the statutory minimum and maximum penalties are the same. Hernton pleaded guilty to both offenses and was sentenced to five (5) years imprisonment. The transcript from the plea hearing states in part:

Q. Do you think you understand what's going on here and what we're doing here today?

A. Yes, sir.

Q. Have you talked about your cases with your attorney and gone over them with him, talked about your right to trial and things like that?

A. Yes, sir.

Q. Has anyone threatened you, coerced you, intimidated you in any way to get you to enter these pleas?

A. No, sir.

Q. Anyone promise you anything of value, hopes of reward, lighter sentence, anything like that?

A. No, sir.

Q. Do you understand the Court could give you up to five years in the penitentiary and a $1,000 fine in each of these matters?

A. Yes, sir.

Q. And that as an habitual offender this time that the Court gives you will have to be served day for day; that you cannot be eligible for parole? Has that been explained to you?

A. No, sir.

Q. You don't understand that?

A. (Shaking Head.)

Q. All right, sir. Well, knowing that fact do you wish to proceed with these guilty pleas to this -- to these indictments?

A. I still didn't understand what you were saying.

Q. All right. Ordinarily you get good time, and you know about that?

A. Yes, sir.

Q. And you are indicted as an habitual offender; that is, that you have repeatedly violated the laws and have been indicted more than two times for criminal offenses, and the law says that when you are an habitual offender; that is, where you continue to violate the laws, any sentence you may get will have to be served day for day. If you get two years, you will serve two years. If you get five years, you will serve five years and will not be eligible for any good time, flat sentence, anything like that. You understand that?

A. Yes, sir.

Q. All right. Do you wish to proceed with these pleas of guilty knowing that fact?

A. Yes, sir.

Q. I want you to understand that these sentences could run consecutively; that is, one behind the other. Do you understand that?

A. Yes, sir.

. . . .

Q. Each of the defendants whose names I have called, stand before me here having a few moments ago indicated a desire to enter a guilty plea to the respective crimes for which they are charged. Before I can do that I must explain the rights that you give up once the Court has accepted your guilty plea and to inform you that these rights will no longer be available to you if the Court accepts your plea as knowingly, willingly and voluntarily given.

These rights are your individual rights and you would not be tried together nor with any other person. Do you all understand that?

A. (By Hernton) Yes, sir.

Q. Anyone who doesn't?

A. (By Hernton) No, sir.

Q. I want each of you to understand that you have the right to a jury trial. You do not have to plead guilty. Going into that trial, you would be presumed innocent. The whole burden of proof would be on the State. The State would call its witnesses. Each of whom your attorney would have an obligation to cross-examine. After that part of the trial, you'd put on your defense. The Court would require the attendance of any witnesses you might wish to testify for you.

Also you would have an opportunity to testify if you desired to do so. However, you could not be required to do so and if you and your attorney determined that it was not in your best interest and you didn't testify the Court would instruct the jury that no inference of guilt could be drawn from the fact that you failed to testify.

You would be entitled to a unanimous verdict, and if the jury finds you guilty and you were

dissatisfied with the finding of the jury, you would have the right to take an appeal to the Mississippi Supreme Court.

Do all of you understand your rights?

A. (By Hernton) Yes.

Q. Anyone who doesn't?

A. (By Hernton) No, sir.

. . . .

BY THE COURT: The Court will accept the plea of . . . Angelo Hernton, . . . as knowingly, willingly and voluntarily given.

Judge Evans then sentenced Hernton to 5 years imprisonment for both crimes for which he was charged, the sentences to be served consecutively. Hernton then filed a Motion to Withdraw Guilty Plea, alleging that his guilty plea was not voluntary, and a Motion to Vacate and Set Aside Habitual Sentence, both of which the trial court denied. Hernton appeals the denial of his Motion to Withdraw Guilty Plea, claiming that he received ineffective assistance from counsel and that his guilty plea was involuntarily obtained.

## DICUSSION OF THE ISSUES

### I.

### WHETHER COUNSEL FOR APPELLANT RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE?

Hernton alleges that he received ineffective representation by counsel and that such induced him to enter a plea of guilty which was not voluntary. Specifically Hernton asserts that counsel failed to advise him of the mandatory minimum sentence, the sentencing enhancement of Miss. Code Ann. section 99-19-81, the privilege against self-incrimination, the right to challenge the composition of the jury, the right to effective assistance of counsel, and the right to the compulsory production of witnesses. A claim for ineffective assistance of counsel is judged by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The two inquiries which must be made under the *Strickland* standard are "(1) whether counsel's performance was deficient, and, if so, (2) whether the deficient performance was prejudicial to the defendant in the sense that our confidence in the correctness of the outcome is undermined." *Neal v. State*, 525 So 2d 1279, 1281 (Miss. 1987) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). The *Strickland* standard is also applicable to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Schmitt v. State*, 560 So. 2d 148, 154 (Miss. 1990). In *Hill v. Lockhart* the Supreme Court stated that "to satisfy the 'prejudice' requirement, the defendant must show that, there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. When applying the *Strickland* standard, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Schmitt*, 560 So. 2d at

154. "To overcome this presumption, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Schmitt*, 560 So. 2d at 154 (brackets in original).

In representing a defendant who has decided to plead guilty, it follows that effective assistance of counsel would necessarily involve ensuring that the guilty plea meets the constitutional and statutory requirements. The Certificate Of Counsel filed with Hernton's Petition To Enter a Guilty Plea reflects that counsel informed Hernton of the maximum and minimum penalties for each count, and that in counsel's opinion Hernton's plea was given intelligently and voluntarily. Although counsel's certificate does not reflect that he informed Hernton of the constitutional rights that would be waived by a guilty plea, this Court held in *Harveston v. State* that when the record reflects that the trial judge complied with Rule 8.04, a claim of ineffective assistance of counsel may be overruled and the voluntariness of the plea may be sustained as a matter of law. *See Harveston v. State*, 597 So. 2d 641, 642-43 (Miss. 1992). In compliance with Rule 8.04, the trial judge clearly informed Hernton of those constitutional rights which would be waived as a result of a guilty plea. Therefore, in accordance with the Court's holding in *Harveston*, counsel's assistance was effective, and the presumption of effective assistance of counsel stands unrebutted. Therefore, Hernton's first point of error is without merit.

## II.

### WHETHER APPELLANT'S GUILTY PLEA WAS INVOLUNTARILY OBTAINED?

A guilty plea involves the waiver of several federal constitutional rights and as such the waiver of those rights must be voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). The constitutional rights discussed in *Boykin* were inserted into the Uniform Criminal Rules of Circuit Court Practice Rule 3.03(3) as part of a required inquiry of a defendant by a court. *Horton v. State*, 584 So. 2d 764, 767 (Miss. 1991). In 1995, the language of Rule 3.03(3) was incorporated into the Uniform Rules of Circuit and County Court Practice Rule 8.04(A)(3) and (4) which state:

> 3. *Voluntariness.* Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.

> 4. *Advice to the Defendant.* When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:

> a. That the accused is competent to understand the nature of the charge;

> b. That the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law;

> c. That the accused understands that by pleading guilty (s)he waives his/her constitutional rights

of trial by jury, the right to confront and cross-examine adverse witnesses, and the right against self-incrimination; if the accused is not represented by an attorney, that (s)he is aware of his/her right to an attorney at every stage of the proceeding and that one will be appointed to represent him/her if (s)he is indigent.

U.R.C.C.C. 8.04(A)(3), (4).

In determining whether a plea of guilt is voluntary and intelligent, a court must do more than inquire as to whether the defendant was informed by his/her attorney of the rights which would be waived; "[a] court must go further and determine in a face-to-face exchange in open court that the accused knows and understands the rights to which he is entitled." *Nelson v. State*, 626 So. 2d 121, 126 (Miss. 1993).

Hernton asserts that he was not informed of his constitutional rights against self-incrimination, to challenge the composition of the jury, to compulsory production of witnesses, to the effective assistance of counsel, and, furthermore, that the court failed to affirmatively inform him of the minimum sentence as required by Rule 8.04. The State, relying on the Court's holding in *State v. Pittman*, 671 So. 2d 62 (Miss. 1996), argues that the failure of the trial judge to ask all questions required by Rule 8.04 was harmless error. The trial judge clearly informed Hernton of his right against self-incrimination when the judge stated:

> [a]lso you would have an opportunity to testify if you desired to do so. However, you could not be required to do so and if you and your attorney determined that it was not in your best interest and you didn't testify the Court would instruct the jury that no inference of guilt could be drawn from the fact that you failed to testify.

Furthermore, it is clear that he was informed of his right to compulsory production of witnesses when the trial judge stated that "[t]he Court would require the attendance of any witnesses you might wish to testify for you." The trial judge did not inform Hernton of his right to challenge the composition of the jury or to effective assistance of counsel. However, although these are rights held by defendants, neither the holding in *Boykin* nor Rule 8.04 require that the court inform a defendant of those rights prior to the defendant entering a plea of guilt. Therefore, the court clearly complied with the requirement to inform Hernton of those constitutional rights that would be affected by a guilty plea.

Rule 8.04 does require that a defendant be informed as to the maximum and minimum penalties provided by law for the offense for which the defendant is charged. U.R.C.C.C. Rule 8.04(A)(4)(b); *see also* *Vittitoe v. State*, 556 So. 2d 1062, 1064-65 (Miss. 1990). The transcript reflects that the trial judge did inform Hernton as to the maximum penalty. In contrast, the transcript also reflects that the trial judge did not inform Hernton as to a minimum penalty. Being charged under both sections 97-23-93(6) and 99-19-81 as an habitual offender, Hernton would necessarily receive the maximum sentence because section 99-19-81 mandates the maximum sentence prescribed by the underlying offense. It is, however, important to note that in examining Hernton the trial judge utilized language which had the potential to confuse Hernton into believing that there was a possibility that he might receive a penalty less severe than the maximum penalty authorized by section 97-23-93(6). The court asked Hernton if he understood that "the Court [sic] *could* give you [sic] *up to* five years in the penitentiary and a $1,000 fine in each of these matters?" to which he responded in the affirmative. (emphasis added). The words "could give" imply less certainty than the words "must give" or "will

give." When used by the court, "could give" indicates an element of discretion in the assigning of a penalty by the court. Furthermore, when the court interjected the words "up to" before stating the maximum statutory penalty, Hernton could have reasonably been led to believe that the court, in exercising its apparent "discretion," might not assign him the maximum penalty, but may in fact assign a penalty less severe. Furthermore, the notion that Hernton was subject to potential confusion is buttressed by the statement made by the judge when he explained to Hernton that his sentence must be served day for day:

> Q. And you are indicted as an habitual offender; that is, that you have repeatedly violated the laws and have been indicted more than two times for criminal offences, and the law says that when you are an habitual offender; that is, where you continue to violate the laws, any sentence you may get will have to be served day for day. *If you get two years, you will serve two years. If you get five years, you will serve five years* and will not be eligible for any good time, flat sentence, anything like that. (emphasis added)

Both of these statements by the judge very likely could have caused Hernton to presume that a lesser penalty was available to him. Given that presumption, the lack of information as to what the lesser penalty might be would be inconsistent with Rule 8.04 and possibly render his guilty plea involuntary. Since Hernton claims that he was not informed as to a mandatory minimum penalty, it appears that he presumed that one in fact existed. Even assuming that counsel did inform him that the statutory minimum and maximum penalties were the same, as the Certificate Of Counsel vaguely suggests, the statements made by the court are enough to create a presumption that the minimum and maximum penalties were not the same. Thus, the record illustrates that there was the potential for Hernton to have been led to believe that there existed a statutory minimum penalty which was less severe than the statutory maximum penalty. Absent explanation by the court to the contrary, Hernton did not receive information as to what that lesser penalty might be.

This court has held that "the trial court's failure to comply with Rule [8.04] can be found harmless error, at least to the extent that the noncompliance pertains to the trial court's informing the defendant of the maximum and minimum sentences, if the defendant was correctly informed by another source or if it appears beyond a reasonable doubt that the plea would have been entered anyway." *State v. Pittman*, 671 So. 2d 62, 65 (Miss. 1996); *see also* *Gibson v. State*, 641 So.2d 1163, 1166 (Miss. 1994); *Gaskin v. State*, 618 So. 2d 103, 108 (Miss. 1993). In regard to the maximum and minimum penalties, the Petition to Enter a Guilty Plea, which Hernton signed, states, "MAXIMUM PENALTY: One Thousand Dollar fine and/or Five (5) years custody MDOC or both fine and imprisonment", and "MINIMUM PENALTY: Suspended fine and/or period of imprisonment". The petition signed by Hernton vaguely alludes to a minimum penalty but does not specifically state a dollar amount for a fine, a number of years for the period of imprisonment, or that the maximum and minimum penalties are in fact the same. Therefore, in reviewing the record, it appears that Hernton was not informed by another source as to a mandatory minimum penalty.

Hernton pleads that, if he had been provided information concerning the minimum sentence, he would not have pleaded guilty.[1] This creates a fact question at least meriting an evidentiary hearing to determine if such influences, or lack thereof, induced Hernton to enter a guilty plea or if his plea was truly voluntary.

## CONCLUSION

Whether Hernton was informed by a reliable source as to the mandatory minimum sentence, and whether having knowledge thereof would have caused him to change his plea, are questions of fact which would determine whether Hernton's guilty plea should stand, or whether he should have been allowed to withdraw his guilty plea and request a jury trial. Since neither of these issues can be determined from the record, an evidentiary hearing is in order pursuant to Miss. Code Ann. § 99-39-23 (1994).

**REVERSED AND REMANDED.**

**PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**

1. Hernton inartfully pleads that the lack of information concerning the mandatory minimum sentence caused him to involuntarily enter a plea of guilty. In Hernton's brief he does not conjunctively state that had he been informed of the mandatory minimum sentence he would not have entered a guilty plea. He does, however, complain of various things about which he was not informed and that his guilty plea was not voluntary. "Indeed, where, . . . a prisoner is proceeding pro se, we take that fact into account and, in our discretion, credit not so well pleaded allegations, to the end that a prisoner's meritorious complaint may not be lost because inartfully drafted." *Moore v. Ruth*, 556 So.2d 1059, 1061 (Miss. 1990) (citations omitted).