# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 95-KA-00178 COA

JOHNNY RAY STEWART AND ROY GLENN MOODY    APPELLANTS

v.

STATE OF MISSISSIPPI    APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED,
PURSUANT TO M.R.A.P. 35-B

| | |
|---|---|
| DATE OF JUDGMENT: | 01/19/95 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | HERMAN F. COX |
| | WARREN L. CONWAY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | GUILTY ON THREE COUNTS OF AGGRAVATED ASSAUT; 15 YEARS ON EACH COUNT TO RUN CONSECUTIVELY |
| DISPOSITION: | AFFIRMED - 9/23/97 |
| MOTION FOR REHEARING FILED: | 10/8/97 |
| CERTIORARI FILED: | 12/1/97 |
| MANDATE ISSUED: | 2/24/98 |

BEFORE BRIDGES, C.J., HINKEBEIN, AND KING, JJ.

KING, J., FOR THE COURT:

Johnny Ray Stewart and Roy Glenn Moody were convicted on three counts of aggravated assault in the Harrison County Circuit Court. Stewart and Moody were sentenced to serve fifteen years, consecutively on each count, in the custody of the Mississippi Department of Corrections. Stewart appeals his conviction, alleging the following errors:

I. The trial court erred in allowing into evidence State's exhibits S-2, S-3, and S-4.

II. The trial court erred in allowing into evidence State's exhibits S-5 and S-6.

III. The trial court erred in allowing into evidence State's exhibit S-1.

IV. The Defendant was denied his Sixth Amendment right to effective assistance of counsel because of :

A. Trial counsel's failure to object to the material variance that existed in count three of the indictment as to the identity of the victim alleged therein and the proof submitted by the State during the trial as to the identity of the subject victim.

B. Trial counsel's failure to request a jury instruction concerning the issue of the prior out of court inconsistent statement given by prosecution witness, Shedrick Thompson.

C. Trial counsel's failure to file a written request for discovery.

D. Trial counsel's failure to request a jury instruction concerning the weight and credibility of the testimony of Eugene Dedeaux, an indicted co-defendant/accomplice.

E. Trial counsel's failure to request a mistrial after the jury announced that it was deadlocked and unable to reach a verdict in this case.

F. Trial counsel's failure to object to comments made by the prosecutor during opening statements concerning the conviction of a co-defendant, Eugene Dedeaux.

G. Trial counsel's failure to make the proper objection to the introduction into evidence of State's exhibits S-1, S-2, S-3, S-4, S-5, and S-6.

V. The trial court erred in overruling the Defendant's motion for directed verdict and in denying the Defendant's request for a peremptory instruction of not guilty, and further erred in overruling the Defendant's motion for a judgment notwithstanding the verdict or, in the alternative, motion for new trial, and the verdict was against the overwhelming weight of the evidence, and the verdict evinced bias and prejudice against the defendant.

Roy Glenn Moody appeals alleging the following errors:

I. The court erred when it limited the cross-examination of alleged accomplice Eugene Dedeaux as to any offer of leniency for testifying on behalf of the State.

II. The court erred when it overruled the request for a curative instruction to the jury to disregard a portion of Eugene Dedeaux's testimony because of the State's discovery violation.

III. The court erred when it failed to allow Gloria Thompkins to testify as an alibi witness.

IV. The court erred when it failed to grant a mistrial.

V. The court erred by denying a severance.

Finding no reversible error, we affirm.

## FACTS

On November 4, 1993, Eugene Dedeaux drove Keith Anderson, Roy G. Moody, and Johnny R. Stewart to a gas station near the Ladner Housing Project. Anderson, Moody, and Stewart walked to Ladner, while Dedeaux waited in the car. According to Dedeaux, Moody was armed with a Winchester pump sawed-off twelve gauge shotgun. Within about ten minutes, Dedeaux heard several gunshots ring out. Not long after that Moody, Anderson, and Stewart returned to the car. The four of them drove to I-10. As they were entering Gulfport from I-10, they collided with a small truck. Anderson, Moody, and Stewart jumped from the car and hid several weapons in the bushes. Dedeaux was stopped by a security guard from a nearby hotel.

When the police arrived, they pulled four weapons from underneath the bushes: a nine millimeter pistol, a double-barrel sawed-off twelve gauge shotgun, a Winchester pump sawed-off twelve gauge, and a .45 semiautomatic. According to police, the weapons fit the description of weapons used in an attack on a group of people at the Ladner Housing Project not long before the accident. Two persons were injured in this assault.

Believing Dedeaux to be connected to the shooting incident, the police took him into custody. Subsequently, Moody, Anderson, and Stewart were arrested and charged with three counts of aggravated assault. Later, the three were jointly indicted for the aggravated assault of Markine Hawthorne, Donta Boose, and Shedrick Thompson. Hawthorne's name was incorrectly stated in the indictment as Markeem Lowe. However, Hawthorne testified that he was known in his neighborhood as "Lowe" because his father's last name is Lowe. Prior to trial, Anderson moved the court for a severance. The court granted Anderson's motion, and he was tried in separate proceedings.

Stewart and Moody were tried jointly. Each of the victims testified that the lower half of the

gunmen's faces were covered by bandanas. Hawthorne and Thompson, who had known the Defendants for several years, testified that they recognized Moody's voice when he said, "What's happening now, m------ f------?" Hawthorne and Thompson testified that Moody was armed with a pump shotgun and fired on the group first. Thompson identified Stewart as one of the gunmen. Boose could not identify the gunmen; however, she testified that one of them carried a pump shotgun.

Eugene Dedeaux, who had entered into a plea bargain, testified against Stewart and Moody. Dedeaux testified that he drove the two Defendants and Anderson to a gas station near the housing project, and Moody was armed with a shotgun. He also testified that Moody, Stewart, and Anderson threw the guns into the bushes as they left the scene of the accident near I-10. Dedeaux indicated that although he refused to give a statement at the police station, he identified the three gunmen to a sheriff's deputy while riding in a patrol car on the night of the shooting.

At the close of the State's case-in-chief, the defense moved for a directed verdict. The court overruled the motion, and the defense went forward with its case. Moody attempted to offer Gloria Thompkins as an alibi witness, but because he failed to disclose the existence of this testimony to the State, the court excluded Thompkins' testimony.

On January 19, 1995 at 6:07 p.m., the court submitted the case to the jury. At 9:00 p.m., the judge told the parties that the jury had indicated that it could not reach a verdict. The judge asked the jury for a numerical indication of its position. The jury responded that it was deadlocked at 8/4 as to each defendant on each count. At this point, counsel for Moody moved for a mistrial; counsel for Stewart asked the court to allow the jury additional time so that it might reach a verdict that night. The court gave the jury a *Sharplin* instruction at 9:12 p.m. At 9:45 p.m. counsel for Moody, again, moved for a mistrial. The court denied the motion. At 10:55 p.m., the jury returned verdicts of guilty on each count against both defendants.

The defendants moved the court for judgments notwithstanding the verdicts, or in the alternative, a new trial. The court denied the motions, and Stewart and Moody appealed to this court.

PART I. DEFENDANT JOHNNY RAY STEWART

I.

THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE STATE'S EXHIBITS S-2, S-3 AND S-4.

II.

THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE STATE'S EXHIBITS S-5 AND S-6.

AND

## III.

### THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE STATE'S EXHIBIT S-1.

Defendant contends that the trial court erred by allowing State's exhibits S-1, S-2, S-3, S-4, S-5, and S-6 into evidence over the objection of trial counsel. State's exhibit S-1 was two Winchester twelve gauge shotgun shells; S-2 was a nine millimeter pistol; S-3 was a sawed-off shotgun; S-4 was a shotgun with a handle grip; S-5 was a Colt .45 handgun; S-6 was a .45 projectile. Defendant contends that these exhibits were admitted in error because the State failed to connect any of them with the crime of aggravated assault.

A review of the record indicates that the Defendant objected to State's exhibits S-1 thru S-6, but not on the ground that the State failed to connect them with the crime for which the Defendant was charged. The record indicates that the Defendant raised objections based on the chain of custody of each exhibit. Because the Defendant now raises objections different from those relied upon at trial, we decline to address the merits of these three issues on appeal. *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993); *Crawford v. State*, 515 So. 2d 936, 938 (Miss. 1987).

## IV.

### THE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT OF EFFECTIVE ASSISTANCE OF COUNSEL.

Stewart alleges that his trial counsel was ineffective; therefore, he was deprived of his Sixth Amendment right of effective assistance of counsel. Under this assignment of error, Stewart raises seven issues contending that trial counsel's performance was deficient and prejudiced his defense.

When reviewing claims of ineffective assistance of counsel, this Court utilizes the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Schmitt v. State*, 560 So.2d 148, 154 (Miss.1990), this Court held "[b]efore counsel can be deemed to have been ineffective, it must be shown (1) that counsel's performance was deficient, and (2) that the defendant was prejudiced by counsel's mistakes." One who claims that counsel was ineffective must overcome the presumption that "counsel's performance falls within the range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 694). In order to overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* On appeal, this Court will review the totality of the evidence before the jury, not just the factual findings that may be affected by error, in determining prejudice to the defendant. *Leatherwood v. State*, 473 So. 2d 964, 969 (Miss. 1985).

*A. Failure of trial counsel to object to the material variance that existed in count three of the indictment as to the identity of the victim alleged therein and the proof submitted by the State during the trial as to the identity of the subject victim.*

Count three of the indictment incorrectly listed one of the three victims, Markine Hawthorne, as Markeem Lowe. Stewart contends that trial counsel should have raised an objection to this variance in the indictment. He contends that the failure to do so resulted in a waiver of this issue on appeal, therefore, causing him to be prejudiced.

Stewart correctly states the rule that "an indictment must state the name of the victim of an offense where that is an element of the offense, and a failure to state it, or a material variance between the statement and proof is fatal, but an immaterial variance is not." *Hughes v. State*, 42 So. 2d 805, 807 (Miss. 1949). On direct examination, the State questioned Hawthorne about the discrepancy in his name as it was written upon the indictment. Hawthorne testified that his name was Markine Hawthorne, but because his father's surname was Lowe, people in his neighborhood sometimes referred to him as Markine Lowe. There was additional proof in the trial that Markine Hawthorne was one of the three victims to which the indictment referred. Under such circumstances, we do not find that the variance in Hawthorne's name, on count three of the indictment, was a material variance. Whereas trial counsel's failure to raise an objection to the variance may have waived it on appeal, it did not prejudice the Defendant so as to effect the final outcome.

*B. Failure of trial counsel to request a jury instruction concerning the issue of the prior out-of-court inconsistent statement given by prosecution witness, Shedrick Thompson.*

On direct examination, Shedrick Thompson testified that he recognized the Defendants' faces above the bandannas, and he identified the voice of one of the gunmen as Moody's. Thompson also testified that Moody was armed with the pump shotgun. On cross-examination, counsel for Moody introduced a tape recorded statement given by Thompson in counsel's office prior to trial. This statement was not given under oath and was inconsistent with Thompson's testimony given during trial.

On the recording, Thompson stated that he was unable to recognize any of the gunmen; he did not know who shot him; he did not recognize any voices; he had not been threatened or coerced into giving the statement; and he was telling the truth. Thompson did not mention Stewart's name during the taping. When confronted by defense counsel about the prior inconsistent statement, Thompson testified that he was alone with defense counsel and Moody and gave the statement out of fear of Moody.

Stewart contends that trial counsel should have filed or requested the court to give the following instruction to the jury:

The court instructs the jury that you have heard evidence that Shedrick Thompson made a statement prior to trial that may be inconsistent with the witness' testimony at this trial. If you believe that an inconsistent statement was made, you may consider the inconsistency in evaluating the believability of the witness' testimony.

Stewart claims that he was prejudiced by trial counsel's failure to file or request such an instruction.

In jury instruction C-1, the court instructed the jury to determine the weight and credibility to be

assigned to the testimony and supporting evidence of each witness. The instruction that Stewart now says should have been requested would have duplicated the court's instruction. *Davis v. State*, 431 So. 2d 468, 475 (Miss. 1983) ("A trial court is not required to give instructions which are covered by other instructions although the language may differ"). Therefore, we find no prejudice to Stewart by trial counsel's failure to file or request an instruction pertaining to Thompson's prior inconsistent statement.

*C. Failure of trial counsel to file a written request of discovery.*

While testifying for the State, Eugene Dedeaux told the court he identified the defendants to law enforcement on the night the crime was committed. Later, defense counsel moved to strike this portion of Dedeaux's testimony contending that the State failed to disclose this statement in its discovery pursuant to Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice.[1] The State argued that it had no prior knowledge of Dedeaux's statement and had heard it for the first time on direct examination. The trial court denied this motion, noting that the defense had failed to make a written request for discovery as required by Rule 4.06. The court also indicated that Dedeaux's testimony was admissible under Rule 403 of the Mississippi Rules of Evidence, because its probative value outweighed any danger of unfair prejudice since it was testimony that had already come out through other witnesses.

Stewart contends that defense counsel's failure to file a written discovery request prejudiced his defense. We disagree. Based on the record, the trial judge made a correct assessment and ruling of the admissibility of Dedeaux's testimony; therefore, we cannot find that counsel's failure to comply with Rule 4.06 was prejudicial to the Defendant.

*D. Failure of trial counsel to request a jury instruction concerning the weight and credibility of the testimony of Eugene Dedeaux, an indicted co-defendant and accomplice.*

Dedeaux was indicted as a co-defendant with Stewart and Moody. He subsequently entered a guilty plea to accessory after the fact and received a five year suspended sentence conditioned upon the successful completion of probation. Stewart argues that trial counsel should have filed or requested a cautionary jury instruction concerning Dedeaux's testimony as an accomplice. We embrace the principle that the granting of a cautionary instruction regarding the testimony of an accomplice witness is discretionary with the trial court. *Wheeler v. State*, 560 So.2d 171, 172 (Miss.1990). Even if trial counsel had requested a cautionary instruction, it was not certain that the trial court would have granted one. Therefore, we cannot find that trial counsel prejudiced the Defendant by not requesting such an instruction.

*E. Failure of trial counsel to request a mistrial after the jury announced that it was deadlocked and unable to reach a verdict in the case.*

On the second day of trial, the jury retired to deliberate at 6:07 p.m. At 9:00 p.m., the jury indicated that it was deadlocked. The trial judge asked the jury for a numerical division of its vote on each defendant. The jury returned a note indicating that it was deadlocked 8/4. The court announced the

jury's position to the defense and prosecution. The court indicated that it was inclined to allow the jury to continue to deliberate. Counsel for Moody moved for a mistrial; the State and counsel for Stewart agreed with the court. Thereafter, the court issued a *Sharplin* instruction to the jury asking that it continue to deliberate and come to a decision. *Sharplin v. State*, 330 So. 2d 591, 596 (Miss. 1976). After another hour and thirty minutes, the jury returned a verdict of guilty on each count against both defendants.

The decision to grant a mistrial rests within the sound discretion of the trial judge. *Brent v. State*, 632 So. 2d 936, 941 (Miss. 1994). As such, a request for a mistrial by trial counsel is not a guarantee that the court will grant one. Further, trial counsel indicated that "we" would ask the court to allow the jury to continue to deliberate. This would indicate that trial counsel's decision was a matter of trial strategy and joined by Stewart, who was present. *Edwards v. State*, 615 So. 2d 590, 596 (Miss. 1993). We do not find that the Defendant was prejudiced by trial counsel's decision not to request a mistrial.

*F. Failure of trial counsel to object to comments made by the prosecutor during opening statements concerning the conviction of co-defendant, Eugene Dedeaux.*

In his opening statement, the prosecutor stated:

Now, Eugene Dedeaux, we also expect to tell you that he was charged in this case and that he's already had his day in court, and he's a convicted felon for what he did. You judge his testimony just as you do anyone else's.

Defense counsel did not raise an objection to the prosecutor's comments. Stewart contends that trial counsel's failure to object was highly prejudicial to his defense. We do not agree.

On cross-examination of Dedeaux, counsel for Stewart used his role in the crime and his plea agreement to impeach his credibility before the jury. Just as the State argues, the defense could have viewed this as an important weapon in its defense of Stewart. We find that counsel's decision not to object to the prosecutor's comments could be viewed as defense strategy rather than a prejudicial deficiency. *Edwards*, 615 So. 2d at 596.

Defendant's attempt to rely on *Buckley v. State,* 223 So. 2d 524, 528 (Miss. 1969) and *Henderson v. State*, 403 So. 2d 139, 141 (Miss. 1981) is misplaced. Neither of these two cases involved prosecutorial statements, but rather the introduction of convictions as evidence. We note also that the Mississippi Supreme Court has limited *Buckley* to its unique facts and circumstances. *Johnson v. State*, 477 So. 2d 196, 213 (Miss. 1995).

*G. Failure of trial counsel to make the proper objection to the introduction into evidence of State's exhibits S-1, S-2, S-3, S-4, S-5, and S-6.*

During the course of the trial, the State introduced the four firearms that were thrown in the bushes by Stewart, Moody, and Anderson as they fled the accident scene. The State also introduced an

empty shotgun cartridge and a .45 projectile removed from Donta Boose. The defense objected to the admission of each of these exhibits based on the chain of custody. The court overruled the objections and admitted the exhibits into evidence.

Stewart contends that trial counsel should have made objections based upon the State's failure to lay the proper predicate and foundation for the admission of the exhibits, and the State's failure to offer any evidence which would connect the exhibits to the crime or to the Defendant. Because trial counsel failed to object on these grounds, Stewart contends that he received ineffective assistance of counsel. We do not find merit in Stewart's argument.

The record indicates that the State laid the proper foundation and established the predicate to place the exhibits into evidence. Markine Hawthorne and Shedrick Thompson testified that during the assault, Defendant Moody fired a shotgun, and Defendant Stewart was one of the gunmen. Officer William Haden, of the Harrison County Sheriff's Office, testified that he collected two Winchester three and a quarter twelve-gauge low brass shotgun shells from the scene of the crime. The court admitted the shotgun shells into evidence as State's exhibit S-1.

Officer Haden testified that he retrieved three weapons from the bushes at the scene of the Defendant's automobile accident. These were State's exhibits S-2, a nine millimeter pistol; S-3, a sawed-off shotgun; and S-4, a shotgun with a handle grip. Exhibits S-2, S-3, and S-4 were admitted into evidence.

During the testimony of John Franovich, the court marked State's exhibits S-5, a Colt .45 handgun, and S-6, a .45 projectile for identification. Franovich, a forensic scientist employed by the Mississippi State Crime Lab, testified that he received the gun and the projectile from the Harrison County Sheriff's Office. Through various ballistics tests he determined that the projectile had been fired from the Colt .45 handgun.

S-5 and S-6 were admitted into evidence during the testimony of Officer Carl Rhodes, an investigator with the Harrison County Sheriff's Office. The officer testified that he retrieved the Colt .45 from the bushes at the accident scene and was given the .45 projectile by hospital personnel after it was removed from one of the victims. He testified that he submitted both to the crime lab for testing.

At that point, the exhibits were sufficiently tied to the crime with which the Defendant was charged. The exhibits were further connected to the Defendant through testimony offered by Eugene Dedeaux. Dedeaux testified that he drove Stewart, Moody, and Anderson near the Ladner Housing Project. Stewart, Moody, and Anderson returned to the car within minutes of Dedeaux having heard gunfire. When the automobile accident occurred, Stewart, Moody and Anderson jumped from the car and threw guns into nearby bushes.

The State laid the foundation for admission of the exhibits into evidence. The jury was properly left to make the determination of the weight accorded the evidence. While trial counsel might have raised an objection to the admission of the evidence, the admissibility of evidence is within the discretion of the trial court. *Baine v. State*, 606 So. 2d 1076, 1078 (Miss. 1992). Therefore, based upon the totality of the circumstances, we cannot find that trial counsel was deficient in failing to raise an objection. *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988).

After having reviewed each of Stewart's allegations of ineffective assistance of counsel, we find that he has failed to meet the two prong test of *Strickland*. Stewart has failed to demonstrate that his trial counsel's performance was deficient and has failed to prove that his defense was prejudiced by any actions taken by his trial counsel. *Strickland*, 466 U.S. at 694. Stewart did not overcome the presumption that his trial counsel provided reasonable professional assistance by showing that but for his counsel's actions, the jury would not have found him guilty of these three counts of aggravated assault.

V. THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR DIRECTED VERDICT AND IN DENYING THE DEFENDANT'S REQUEST FOR A PEREMPTORY INSTRUCTION OF NOT GUILTY, AND FURTHER ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL, AND THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, AND THE VERDICT EVINCED BIAS AND PREJUDICE AGAINST THE DEFENDANT.

We review a trial court's denial of a directed verdict, peremptory instruction, or JNOV under the sufficiency of the evidence standard of review. In *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993), the court held that the evidence is viewed in a light most favorable to the State:

In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence . . . consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could find the accused not guilty.

*See also Williams v. State*, 595 So. 2d 1299, 1302 (Miss. 1992); *Heidel v. State*, 587 So. 2d 835, 838 (Miss. 1991); *Roberts v. State,* 582 So. 2d 423, 424 (Miss. 1991).

Stewart contends that the trial court erred in denying his motion for a directed verdict, request for a peremptory instruction of not guilty and motion for judgment not withstanding the verdict. However, upon application of the appropriate standard of review, we find that reasonable and fair-minded jurors could have found Stewart guilty.

Stewart also contends that the verdict was against the overwhelming weight of the evidence and evinced bias and prejudice. We disagree. The standard of review employed upon a challenge to the weight of the evidence, in a criminal case, is provided by *Thornhill v. State*, 561 So. 2d 1025, 1030 (Miss. 1989):

In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.

Accepting as true the evidence supporting the jury's verdict, we do not find that the circuit court abused its discretion in denying Stewart's motion for a new trial. We affirm.

PART II: DEFENDANT ROY GLENN MOODY.

I.

THE TRIAL COURT ERRED WHEN IT LIMITED THE CROSS-EXAMINATION OF ALLEGED ACCOMPLICE EUGENE DEDEAUX AS TO ANY OFFER OF LENIENCY FOR TESTIFYING ON BEHALF OF THE STATE.

Eugene Dedeaux was initially indicted as a co-defendant, along with Moody, Stewart, and Anderson, for three counts of aggravated assault. Subsequently, Dedeaux entered into a plea agreement with the State. Under the plea agreement, the State dropped the charges under the initial indictment and indicted Dedeaux as an accessory after the fact. The record reflects that the court allowed defense counsel to cross-examine Eugene Dedeaux about the plea agreement. He testified that he had entered into a plea agreement and received probation with no jail time.

Moody contends that the trial court limited his attempt to impeach Dedeaux with the subsequent plea bargain. Moody contends that the court limited his inquiry into the possibility that the State reduced the charges against Dedeaux in exchange for his testimony against the Defendants. However, the record indicates that the court allowed Moody to inquire into that which was accurate and relevant concerning Dedeaux's plea: the reduction in charges and the punishment. The court did not allow Moody to inquire into whether the State had offered Dedeaux a possible non-adjudication of guilt in exchange for his testimony. The State objected to this line of questioning stating that it was not a part of the plea bargain. The court sustained the objection, indicating that non-adjudication of guilt was simply considered by the court but was not offered to Dedeaux.

From the record, it is clear that the court allowed Moody ample lattitude to explore Dedeaux's motive for testifying. The court was within its discretion to limit this line of testimony to that which was factual, not speculative or conjecture. Therefore, we do not find that the court unreasonably restricted Moody's attempt to impeach Dedeaux.

II.

THE COURT ERRED WHEN IT OVERRULED THE REQUEST FOR A CURATIVE INSTRUCTION TO THE JURY TO DISREGARD A PORTION OF EUGENE DEDEAUX'S TESTIMONY BECAUSE OF THE STATE'S DISCOVERY VIOLATION.

Dedeaux testified that when he was being transported to jail, he told the sheriff's deputy that Moody, Stewart, and Anderson had fled from his car. In a later motion, Moody moved to exclude Dedeaux's testimony because the State had failed to provide this statement in its discovery. The State denied having had any prior knowledge of the statement. The trial court denied the motion, because Moody

failed to make a timely request for discovery, and because it determined that the statement was admissible under Rule 403 of the Mississippi Rules of Evidence.

Based upon the record, we find that the trial court was within its authority to deny the motion. First, there was no indication that the State was aware of Dedeaux's identification of the Defendant. Second, even if the State had been aware of the statement, Moody failed to raise a contemporaneous objection to the alleged Rule 4.06 violation, pursuant to *Box v. State,* 437 So. 2d 19, 22-26 (Miss. 1983) (Robertson, J., specially concurring) (defendant must raise a timely objection before the court takes any action to exclude evidence). Finally, the trial court found under Rule 403 of the Mississippi Rules of Evidence that the testimony was admissible because prior witnesses had identified Moody, and the defense was neither surprised nor prejudiced by Dedeaux's statement.

III.

THE COURT ERRED WHEN IT FAILED TO ALLOW GLORIA THOMPKINS TO TESTIFY AS AN ALIBI WITNESS.

Moody attempted to introduce Gloria Thompkins as an alibi witness on the second day of trial. The State was told of the existence of this witness on the first day of trial. Defense counsel admitted having had knowledge of this witness some months before trial but failed to disclose this through discovery to the State. The State objected to allowing Thompkins to testify. Although, the State admitted not having made a demand of any potential alibi witnesses pusuant to UCRCCP 4.07, the trial court excluded Thompkins testimony.[2] The court based its ruling on the defense's failure to provide discovery under UCRCCP 4.06.

In *Box*, Justice Robertson indicated that the State and the defendant were both bound by a reciprocal responsibility to disclose under Rule 4.06. *Box,* 437 So. 2d at 25, n.3. In the present case, Moody submitted a discovery request on January 17, 1995. However, he failed to disclose Thompkins as an alibi witness until the first day of trial on January 18. Even at this late date, Moody was obligated under Rule 4.06 to provide the names of witnesses to the State, having made a corresponding request:

(c) If the defendant requests discovery under this rule, the defendant shall, subject to constitutional limitations, promptly disclose to the prosecution and permit it to inspect, copy, test, and photograph, the following information and material which corresponds to that which the defendant sought and which is in the possession, custody, or control of the defendant or his or her counsel, or the existence of which is known, or by the exercise of due diligence may become known, to the defendant or his counsel:

(1) Names and addresses of all witnesses in chief proposed to be offered by the defendant at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved, of each such witness, and the substance of any oral statement made by any such witness;

(j) In the event of wilful violations of obligations imposed by this rule or any discovery request or

order issued thereto, the court may impose upon a party or counsel, or both, such sanctions as may be appropriate.

UCRCCP 4.06(c)(1)(j).[(3)](#)

Moody failed to disclose Thompkins as a potential alibi witness even though he knew of her existence some months prior to trial. He particularly knew of her existence when he submitted the discovery request on January 17. Now he contends that he was prejudiced by the court's exclusion of Thompkins' testimony.

Discovery violations are balanced against the resulting prejudice to the defendant. *Moore v. State,* 508 So. 2d 666, 668 (Miss. 1987). Reviewing the testimony provided by other witnesses, we cannot say that Moody was prejudiced by the exclusion of Thompkins testimony. A proffer of Thompkins' testimony indicated that she planned to state that Moody was with her during the time of the shooting. Testimony from Hawthorne, Thompson, and Dedeaux placed Moody at the scene of the crime, carrying a shotgun. Based on the totality of the evidence, we cannot say that Moody was prejudiced by the exclusion of Thompkins' testimony.

## IV.

### THE COURT ERRED WHEN IT FAILED TO GRANT A MISTRIAL.

As noted in Part I of this opinion, the jury retired to deliberate at 6:07 p.m. At approximately 9:00 p.m. the jury indicated that it was deadlocked. The judge asked the jury to indicate its numerical position, without indicating which direction it was leaning. The jury returned a note indicating that it was deadlocked 8/4 on each Defendant, on each count. The judge then asked the parties, "What's your pleasure?" The prosecutor requested a *Sharplin* instruction. Moody moved for a mistrial. Stewart asked the court to charge the jury to continue deliberations. After polling the parties, the trial judge returned the jury to the courtroom and issued a *Sharplin* instruction. At 9:00 p.m., the jury returned to deliberate.

At 9:46 p.m., the judge indicated that he believed the jury was giving the *Sharplin* instruction serious consideration:

I had said that I was going to probably call it a night after 30 minutes of further deliberation. I would like to hear from you-all. And just to let you know where I am at this point, since we have not heard from them, I believe that they are giving some serious consideration to the last instruction that they were given, and that they may actually be trying to reach a verdict that is unanimous. I would hate to take that away from them at this point, and -- right now, I believe I would like to let them stay another 15 minutes or so. I know you don't want that, Mr. Conway. I have a quarter till 10:00 at this point.

The State and Stewart were in agreement with the court. Again, Moody requested a mistrial. The jury returned a verdict at 10:55 p.m.

Moody contends that the trial court erred by allowing the jury to deliberate until 11:00 p.m. Moody correctly concedes that the length of time that a jury deliberates lies within the discretion of the trial judge, and we will not reverse absent an abuse of that discretion. *Riddle v. State*, 580 So. 2d 1195, 1202 (Miss. 1991). There is no indication that the trial judge did or said anything to coerce, intimidate, or compel the jury to return a verdict. The record does indicate that the judge believed the jury would render a verdict if given additional time. *See also Sharplin*, 330 So. 2d at 596. The judge allowed the jury additional time without coercion, and we find no abuse of discretion in the judge's actions. *Folk v. State*, 576 So. 2d 1243, 1249 (Miss. 1991).

## V.

## THE COURT ERRED BY DENYING A SEVERANCE.

Moody contends that he requested a severance, during jury deliberations, from his co-defendant Stewart. Moody contends that he moved for a severance out of necessity when the jury declared itself deadlocked, and the court denied him a mistrial. He alleges that the trial court committed error by denying his motion.

Moody's motion for severance was untimely. Section 99-15-47 of the Mississippi Code of 1972 requires a defendant under a joint indictment to move for a severance prior to arraignment. Notwithstanding the requirement of the statute, the granting or refusing of severances is within the discretion of the trial judge. UCRCCP 4.04;[(4)] *Tillman v. State*, 606 So. 2d 1103, 1105 (Miss. 1992). We find no abuse of discretion by the trial judge and affirm the trial court's judgment.

**THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF JOHNNY RAY STEWART OF COUNTS I, II, AND III, AGGRAVATED ASSAULT, AND THREE CONSECUTIVE FIFTEEN YEAR SENTENCES IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF ROY GLENN MOODY OF COUNTS I, II, AND III, AGGRAVATED ASSAULT, AND THREE CONSECUTIVE FIFTEEN YEAR SENTENCES IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**BRIDGES, C.J.,, COLEMAN, DIAZ, HERRING, HINKEBEIN, PAYNE, AND SOUTHWICK, JJ., CONCUR. McMILLIN AND THOMAS, P.JJ., NOT PARTICIPATING.**

1. Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice was superceded by Rule 9.04 of the Uniform Rules of Circuit and County Court Practice on May 1, 1995.

2. UCRCCP 4.07 was replaced by URCCC 9.05 on May 1, 1995.

3. UCRCCP 4.06(c)(1)(j) was replaced by URCCC 9.04 which requires production of discovery by the prosecution without request from the defendant.

4. UCRCCP 4.04 was replaced by UCCCR 9.03 on May 1, 1995.